
**Origin Bank**

advance loan to

INDEPENDENCE FUEL SYSTEMS LLC

July 26, 2016

## *Table of Contents*

1.    Loan Agreement dated July 26, 2016, among INDEPENDENCE FUEL SYSTEMS LLC ("Borrower"), a Texas limited liability company, and ORIGIN BANK ("Lender"), a Louisiana state banking association.

2.    First Amendment to Loan Agreement dated July 25, 2017, between Borrower and Lender.

3.    Advance Promissory Note dated July 26, 2016, in the original principal amount of $3,500,000.00, executed by Borrower, and payable to the order of Lender.

4.    Advance Promissory Note (Second Advance Note) dated July 25, 2017, in the original principal amount of $1,500,000.00, executed by Borrower, and payable to the order of Lender.

5.    Unlimited Guaranties dated July 26, 2016, executed by STEPHEN W. ROBINSON, DON NEUMEYER, and R. KEVIN RUSSELL (collectively the "Guarantors").

6.    Ratification of Unlimited Guaranties dated July 25, 2017, executed by STEPHEN W. ROBINSON, DON NEUMEYER, and R. KEVIN RUSSELL (collectively the "Guarantors").

7.    Security Agreement dated July 26, 2016, executed by Borrower in favor of Lender.

8.    UCC-1 Financing Statement (all assets) from Borrower in favor of Lender, and filed with the Texas Secretary of State on August 10, 2016, under filing number 16-0026283583.

9.    Pledge and Security Agreement dated July 26, 2016, executed by STEPHEN W. ROBINSON and JEANNE M. ROBINSON in favor of Lender, covering 4,303,007 of VACCINOGEN, INC. (OTC).

10.    UCC-1 Financing Statement (pledge) from STEPHEN W. ROBINSON and JEANNE M. ROBINSON in favor of Lender, and filed with the Texas Secretary of State on October 21, 2016, under filing number 16-0034869411.

11.    Share certificates covering unrestricted shares of VACCINOGEN, INC. (OTC) in certificated form, along with Stock Powers signed in blank for each of the certificates.

12.    Restated Collateral Assignment of Lease dated July 25, 2017, executed by Borrower in favor of Lender, and covering the Real Estate Leases, including the Dallas Property Real Estate Lease.

13.    Restated Collateral Assignment of Royalties dated July 25, 2017, executed by Borrower in favor of Lender, and covering all of Borrower's rights and royalties under the Royalty Agreements, including the Dallas Property Royalty Agreement.

14.    Assignment of Deposit Account dated July 26, 2016, executed by Borrower in favor of Lender.

15.    Landlord's Waivers dated July 26, 2016, executed by Borrower and each of the Landlords under the Real Estate Leases, in favor of Lender, for each of the following properties:

         (a)    Longview-Pittman (Eastman) Property
         (b)    Carthage Property
         (c)    Centerville Property
         (d)    Longview-Mobile Property

16.    Incumbency Certificate and Resolutions of the Board of Managers of Borrower; and Certificate of Formation and Amended and Restated Company Agreement dated January 1, 2014, as amended by the First Amendment dated October 1, 2014 (the "Company Agreement").

17.    Written consent signed by the holders of 80% of Borrower's membership interest consenting to the Second Advance Loan.

 **Origin Bank**

500 Throckmorton Street, Suite 350
Fort Worth, Texas 76102

July 26, 2016

INDEPENDENCE FUEL SYSTEMS LLC
Attention: R. Kevin Russell, Chief Executive Officer
515 N. Fredonia Street
Longview, Texas 75601

    *Re:    Loan Agreement*

Ladies and Gentlemen:

    This letter sets forth the Loan Agreement (this "Loan Agreement") among INDEPENDENCE FUEL SYSTEMS LLC ("Borrower"), a Texas limited liability company, and ORIGIN BANK ("Lender"), a Louisiana state banking association, with respect to loans from Lender to Borrower and obligations of Borrower and Guarantors to Lender.

    1.    Loans. (a) Subject to the terms and conditions set forth in this Loan Agreement and the other agreements, instruments, and documents executed and delivered in connection herewith (collectively the "Loan Documents"), Lender agrees to make a multiple-advance term loan in the maximum principal amount of $3,500,000.00 to Borrower (the "Advance Loan") on the terms set forth in the Advance Promissory Note attached as Exhibit A (the "Advance Note"), for the purposes set forth below. Subject to the terms and conditions hereof, Borrower may request multiple advances on the Advance Loan from time to time during the period commencing on the date hereof and continuing through 11:00 a.m. (Fort Worth, Texas time) on July 26, 2017 (the "Termination Date") in an aggregate principal amount not to exceed $3,500,000.00. The Advance Loan is not a revolving line of credit. After the Termination Date, principal shall be payable in equal monthly installments in an amount sufficient to amortize the principal balance on the Termination Date over a ten-year period, plus all accrued, unpaid interest. All sums advanced under the Advance Loan, together with all accrued but unpaid interest thereon, shall be due and payable in full on July 26, 2021 (the "Maturity Date").

    (b)    The unpaid principal balance of the Advance Note shall bear interest from the date advanced until paid or until Event of Default (as defined below) or the Maturity Date at a fluctuating rate equal to the sum of the Prime Rate (as defined in the Advance Note), plus two percent (2.00%).

512215.6 [July 25, 2016]

INDEPENDENCE FUEL SYSTEMS LLC
July 26, 2016
Page 2 of 25

       (c)    Advances on the Advance Loan may be used only for the following purposes: (i) to refinance existing debt owed by Borrower to Austin Bank, Texas N.A., (ii) to pay accounts payable owed by Borrower, and (iii) for capital expenditures and working capital related to the new fueling station in Laredo, Webb County, Texas. Borrower shall give notice to Lender of any requested advance on the Revolving Loan, in the form of the Request for Borrowing attached as <u>Exhibit B</u>, not later than 10:00 a.m. (Fort Worth, Texas time) on the date of the requested advance. The request for an advance may be given telephonically if promptly confirmed in writing by delivery of Request for Borrowing. Notwithstanding any provision of this Loan Agreement or the Loan Documents to the contrary, none of the proceeds of the Revolving Loan will be used, directly or indirectly, for the purpose, whether immediate, incidental, or ultimate, of purchasing or carrying any "margin stock" as defined in Regulation U of the Board of Governors of the Federal Reserve System as in effect from time to time.

       (d)    The Advance Loan, all other loans now or hereafter made by Lender to Borrower, and any renewals or extensions of or substitutions for those loans, will be referred to collectively as the "<u>Loans</u>." The Advance Note, all other promissory notes now or hereafter payable by Borrower to Lender, and any renewals or extensions of or substitutions for those notes, will be referred to collectively as the "<u>Notes</u>."

       2.    <u>Collateral</u>. (a) Payment of the Notes, all other obligations, fees, and expenses due pursuant to this Loan Agreement or the other Loan Documents, all obligations, fees, and expenses with respect to treasury and cash management services, and all other secured indebtedness under the following security documents (collectively the "<u>Secured Obligations</u>") will be secured by the first liens and first security interests created or described in the following (collectively the "<u>Security Documents</u>"): (i) a Security Agreement (the "<u>Security Agreement</u>") of even date, executed by Borrower in favor of Lender, and covering all accounts, inventory, furniture, fixtures, equipment, general intangible, and substantially all other personal property (the "<u>Collateral</u>"); (ii) a Collateral Assignment of Leases (the "<u>Assignment of Leases</u>") of even date, executed by Borrower in favor of Lender, and covering the following real estate leases (collectively the "<u>Real Estate Leases</u>"):

       (1)    Surface Lease Agreement for Compressed Natural Gas Vehicle Fueling Station dated May 1, 2016, between Riata Minerals, Ltd. and Borrower, covering 2.75 acres situated in Laredo, Webb County, Texas ("<u>Laredo Property</u>");

       (2)    Compressed Natural Gas Vehicle Fueling Station and Compressed Natural Gas Sales Agreement dated June 21, 2012, between Borrower and Eastern Fuel LLC, covering the property located at 3302 S. Eastman Road, and 131 Pittman Street, Longview, Gregg County, Texas ("<u>Longview-Pittman (Eastman) Property</u>");

512215.6 [July 25, 2016]

INDEPENDENCE FUEL SYSTEMS LLC
July 26, 2016
Page 3 of 25

        (3)    Compressed Natural Gas Vehicle Fueling Station and Compressed Natural Gas Sales Agreement dated June 21, 2012, between Borrower and Eastern Fuel LLC, covering property situated at 1086 US Highway 59 S., Carthage, Panola County, Texas ("Carthage Property"), as amended by the First Amendment to the Compressed Natural Gas Vehicle Fueling Station and Compressed Natural Gas Sales Agreement dated effective July 1, 2015;

        (4)    Surface Lease Agreement for Compressed Natural Gas Vehicle Fueling Station dated December 1, 2013, between Christina S. Lacey and Borrower, covering 2 acres located at 350 W. Frontage Road, Centerville, Leon County, Texas ("Centerville Property");

        (5)    Surface Lease Agreement for Compressed Natural Gas Vehicle Fueling Station dated February 1, 2014, between Shoco Development LP and Borrower, covering property located at 998 Mobile Drive, Longview, Gregg County, Texas ("Longview-Mobile Property");

(iii) a Collateral Assignment of Royalties (the "Assignment of Royalties") of even date, executed by Borrower in favor of Lender, and covering all of Borrower's rights and royalties under the following agreements (collectively the "Royalty Agreements"):

        (1)    Compressed Natural Gas Dispensing Royalty Agreement dated July 8, 2016, between Borrower and U.S. Venture, Inc. (Laredo Property);

        (2)    Compressed Natural Gas Dispensing Royalty Agreement dated July 8, 2016, between Borrower and U.S. Venture, Inc. (Longview-Pittman (Eastman) Property);

        (3)    Compressed Natural Gas Dispensing Royalty Agreement dated May 26, 2015, between Borrower and U.S. Venture, Inc., as amended by the Amendment No. 1 to the Compressed Natural Gas Dispensing Royalty Agreement dated July 7, 2016 (Carthage Property);

        (4)    Compressed Natural Gas Dispensing Royalty Agreement dated May 26, 2015, between Borrower and U.S. Venture, Inc., as amended by the Amendment No. 1 to the Compressed Natural Gas Dispensing Royalty Agreement dated July 7, 2016 (Centerville Property);

(iv) a Pledge and Security Agreement (the "Pledge Agreement") of even date, executed by STEPHEN W. ROBINSON and JEANNE ROBINSON ("Pledgors") in favor of Lender, and covering

512215.6 [July 25, 2016]

INDEPENDENCE FUEL SYSTEMS LLC
July 26, 2016
Page 4 of 25

4,303,007 shares of VACCINOGEN, INC. (OTC) common stock (the "Pledged Shares"); (v) an Assignment of Deposit Account (the "Assignment of Deposits") of even date, executed by Borrower in favor of Lender, and covering a certificate of deposit maintained at Lender with a minimum amount of $500,000.00; and (vi) any other security documents now or hereafter executed in connection with the Loans.  If requested by Lender, Borrower will execute in favor of Lender security agreements, financing statements, assignments, or amendments, in Proper Form (as defined below), necessary or desirable to evidence or perfect the liens and security interests of Lender.  Within thirty (30) days of the date of this Loan Agreement, Borrower further agrees to deliver Landlord's Subordination in Proper Form signed by Borrower and each of the landlords under the Real Estate Leases.

(b)     Payment of the Secured Obligations will also be guaranteed by each of STEPHEN W. ROBINSON, DON NEUMEYER, and R. KEVIN RUSSELL (collectively the "Guarantors"), pursuant to Unlimited Guaranties in Proper Form (collectively the "Guaranties"); provided, however, that Lender agrees that it will not make demand upon any of the Guaranties or file suit on any of the Guaranties, until at least one hundred twenty (120) days after the Termination Date or the acceleration of the maturity of the Advance Loan, during which time Lender will use reasonable commercial efforts to realize upon the collateral under the Security Documents and to collect the Advance Loan from Borrower.

(c)     Within thirty (30) days of the date of this Agreement, Borrower hereby agrees to cause Pledgors to deliver the following in Proper Form:

(1)     Original stock certificates covering unrestricted shares in Vaccinogen, Inc., as further described in Schedule A attached to the Pledge Agreement (the stock certificates are to be reissued in unrestricted form);

(2)     Stock powers signed in blank for each of the original stock certificates; and

(3)     Control Agreements covering the securities accounts described in Schedule A attached to the Pledge Agreement, and signed by Pledgors and the respective securities intermediaries.

(d)     Unless a security interest would be prohibited by law or would render a nontaxable account taxable, Borrower grants to Lender a contractual possessory security interest in, and hereby assigns, pledges, and transfers to Lender all Borrower's rights in any deposits or accounts now or hereafter maintained with Lender (whether checking, savings, or any other account), excluding, however, accounts maintained by Borrower at Lender for the purpose of revenue distribution to third parties entitled to those revenues and any other accounts held by

512215.6 [July 25, 2016]

INDEPENDENCE FUEL SYSTEMS LLC
July 26, 2016
Page 5 of 25

Borrower for the benefit of a third party.   Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff any sums owing on the Secured Obligations against any and all such deposits and accounts; and Lender shall be entitled to exercise the rights of offset and banker's lien against all such accounts and other property or assets of Borrower with or in the possession of Lender to the extent of the full amount of the Secured Obligations.

     3.    <u>Borrowing Base</u>. [*Reserved.*]

     4.   <u>Conditions Precedent</u>.  (a)  The obligation of Lender to make the initial advance on the Advance Loan is subject to Borrower's satisfaction, in Lender's sole discretion of the following conditions precedent:

         (1)    Lender's receipt and satisfactory review by Lender of the 2015 fiscal year-end and 2016 year-to-date financial statements of Borrower, including a balance sheet, an income statement, and a cash flow statement, prepared in conformity with generally accepted accounting principles in effect on the date such statement was prepared, consistently applied ("<u>GAAP</u>").

         (2)    Borrower shall be in compliance with all existing obligations, there shall be no default at closing or any funding on any existing obligations, and all representations and warranties in connection with existing obligations must be true.

         (3)    the negotiation, execution, and delivery of Loan Documents in Proper Form, including, but not limited to, the following:

            (a)    this Loan Agreement;
            (b)    the Advance Note;
             (c)    the Security Agreement;
             (d)    the Assignment of Leases;
            (e)    the Assignment of Royalties;
             (f)    the Pledge Agreement;
            (g)    the Assignment of Deposits;
             (h)    the Guaranties; and
            (i)    Borrowing Resolution.

         (4)    satisfactory evidence that Lender holds perfected liens and security interests in all Collateral for the Secured Obligations, subject to no other liens or security interests other than the Permitted Liens (as defined below).

512215.6 [July 25, 2016]

INDEPENDENCE FUEL SYSTEMS LLC
July 26, 2016
Page 6 of 25

(5)    there shall not have occurred any result, occurrence, condition, change, fact, event, circumstance, or effect that, individually or in the aggregate, has caused or would reasonably be expected to cause a material adverse change on (i) the financial condition, business, assets, properties, liabilities (actual and contingent), operations or results of operations of Borrower or any Guarantors, (ii) the ability of Borrower or any Guarantors to own their assets and conduct business in the ordinary course as presently owned and conducted, or (iii) the ability of Borrower or any Guarantors to perform their obligations under or consummate the transactions contemplated by the Loan Documents (collectively "Material Adverse Change").

(6)    there being no order or injunction or other pending or threatened litigation in which there is a reasonable possibility, in Lender's judgment, of a decision which could result in a Material Adverse Change.

(7)    Lender shall have completed and approved a review of the status of the environmental condition of Borrower's properties, and the results of such review shall be acceptable to Lender in its sole discretion.

(8)    Lender's receipt and review, with results satisfactory to Lender and its counsel, of information regarding litigation, tax, accounting, insurance, pension liabilities (actual or contingent), real estate leases, material contracts, debt agreements, property ownership, and contingent liabilities of Borrower.

(9)    Lender's receipt of payoff information and terminations in Proper Form of the UCC financing statements of Austin Bank, Texas N.A.

(10)    Borrower shall deliver certificates of the appropriate government officials of the state of incorporation or organization of Borrower and Guarantors as to the existence and good standing of Borrower and Guarantors, each dated within ten (10) days prior to the date of this Loan Agreement.

(11)    Borrower's delivery of a written consent in Proper Form signed by the holders of 80% of Borrower's membership interest consenting to the Advance Loan.

(12)    Borrower's delivery of signed copies of each of the Real Estate Leases, as amended.

(13)    Borrower's delivery of signed copies of each of the Royalty Agreements, as amended.

(14)    Control agreements or stock certificates for the Pledged Shares.

512215.6 [July 25, 2016]



INDEPENDENCE FUEL SYSTEMS LLC
July 26, 2016
Page 7 of 25

       (b)     Lender will not be obligated to make the Loans or any subsequent advance on the Loans, if, prior to the time that a loan or advance is made, (i) there has been any Material Adverse Change, (ii) any representations or warranties made by Borrower in this Loan Agreement or the other Loan Documents is untrue or incorrect in any material respect as of the date of the advance or loan, (iii) Lender's review of the Collateral indicates that the Collateral is unacceptable to Lender, in its sole discretion, (iv) Lender has not received all Loan Documents appropriately executed by Borrower, Guarantors, and all other proper parties, (v) Lender has requested that Borrower or Guarantors execute additional loan or security documents and those documents have not yet been properly executed, delivered, and recorded, (vi) Borrower is not in compliance with all reporting requirements, or (vii) an Event of Default (as defined below) has occurred and is continuing.

       5.    <u>Representations and Warranties</u>.  Borrower hereby represents and warrants to Lender as follows:

       (a)     The execution, delivery, and performance of this Loan Agreement, the Notes, the Security Documents, and all of the other Loan Documents by Borrower have been duly authorized by Borrower's managers and members, and this Loan Agreement, the Notes, the Security Documents, and all of the other Loan Documents constitute legal, valid, and binding obligations of Borrower, enforceable in accordance with their respective terms;

       (b)     The execution, delivery, and performance of this Loan Agreement, the Notes, the Security Documents, and the other Loan Documents, and the consummation of the transaction contemplated, do not require the consent, approval, or authorization of any third party and do not and will not conflict with, result in a violation of, or constitute a default under (i) any provision of Borrower's certificate of formation or Borrower's Amended and Restated Company Agreement, as amended (the "<u>Company Agreement</u>") or any other agreement or instrument binding upon Borrower or (ii) any law, governmental regulation, court decree, or order applicable to Borrower;

       (c)     Borrower is a limited liability company, existing in good standing under the laws of the State of Texas, and has the limited liability company power and authority to consummate the transactions contemplated by the Loan Documents; and Borrower is authorized to do business and in good standing in the State of Texas;

       (d)     Each financial statement of Borrower, now or hereafter supplied to Lender, was (or will be) prepared in accordance with GAAP, in Proper Form, and truly discloses and fairly presents Borrower's financial condition as of the date of each such statement, and there has been no Material Adverse Change;

512215.6 [July 25, 2016]

INDEPENDENCE FUEL SYSTEMS LLC
July 26, 2016
Page 8 of 25

       (e)    There are no actions, suits, or proceedings pending or threatened against or affecting Borrower, any Guarantors, or the Collateral, before any court or governmental department, commission, or board, which, if determined adversely, would reasonably be expected to cause a Material Adverse Change;

       (f)    Borrower has filed all federal, state, and local tax reports and returns required by any law or regulation to be filed and has either duly paid all taxes, duties, and charges indicated due on the basis of such returns and reports, or made adequate provision for the payment thereof, and the assessment of any material amount of additional taxes in excess of those paid and reported is not reasonably expected;

       (g)    Borrower is in compliance in all material respects with all applicable provisions of the Employee Retirement Income Security Act of 1974, as amended or recodified from time to time ("ERISA"); Borrower has not violated any provision of any "defined benefit plan" (as defined in ERISA) maintained or contributed to by Borrower (each a "Plan"); no "Reportable Event" as defined in ERISA has occurred and is continuing with respect to any Plan initiated by Borrower, unless the reporting requirements have been waived by the Pension Benefit Guaranty Corporation; and Borrower has met its minimum funding requirements under ERISA with respect to each Plan;

       (h)    Borrower certifies that Schedule 1 sets forth a true and correct organizational chart and list of all Subsidiaries or other entities owned by Borrower indicating the ownership in each; and as used in this Loan Agreement, "Subsidiaries" shall mean entities for which Borrower owns, directly or indirectly, interests having more than fifty-one percent (51%) of the outstanding ownership or fifty-one percent (51%) of the ordinary voting power for the election of directors or managers of such entity; and

       (i)    (i)    Borrower is not in violation of any laws relating to terrorism or money laundering, including Executive Order No. 13224 and the USA Patriot Act (collectively "Anti-Terrorism Laws") or knowingly engaging in or conspiring to engage in any transaction that evades or avoids, or has the purpose of evading or avoiding, or attempts to violate, any of the prohibitions set forth in any Anti-Terrorism Law.

       (ii)    Borrower is not any of the following (each a "Blocked Person"): (A) a person or entity that is listed in the annex, to, or is otherwise subject to the provisions of, Executive Order No. 13224; (B) a person or entity owned or controlled by, or acting for or on behalf of, any person or entity that is listed in the annex to, or is otherwise subject to the provisions of, Executive Order No. 13224; (C) a person or entity with which any bank or other financial institution is prohibited from dealing or otherwise engaging in any transaction by any Anti-Terrorism Law; (D) a person or entity that commits, threatens or conspires to commit or

512215.6 [July 25, 2016]



INDEPENDENCE FUEL SYSTEMS LLC
July 26, 2016
Page 9 of 25

supports "terrorism" as defined in Executive Order No. 13224; or (E) a person or entity who is affiliated with any person or entity covered by this subsection.

(iii)    Borrower does not (i) conduct any business or engage in making or receiving any contribution of funds, goods, or services to or for the benefit of any Blocked Person, or (ii) deal in, or otherwise engage in any transaction relating to, any property or interests in property blocked pursuant to Executive Order No. 13224.

(iv)    Borrower is not in violation of any rules or regulations promulgated by the Office of Foreign Asset Controls ("OFAC") or of any economic or trade sanctions or administered and enforced by OFAC, or is not conspiring to engage in any transaction that evades or avoids, or has the purpose of evading or avoiding, or attempts to violate, any of the prohibitions set forth in any rules or regulations promulgated by OFAC.

7.    Covenants. Until the Loans and all other Secured Obligations are fully paid and satisfied and any commitment of Lender under this Loan Agreement is terminated, Borrower shall, unless Lender otherwise consents in writing:

(a)    (i) maintain its existence in good standing in the state of its formation, maintain its authority to do business in all other states in which it is required to qualify, and maintain full legal capacity to perform all its obligations under this Loan Agreement and the Loan Documents, (ii) continue to operate its business as presently conducted and preserve and maintain the rights, licenses, permits, privileges, and franchises material to the conduct of its business, (iii) not permit a material change in its ownership, control, or management, (iv) not permit its dissolution, liquidation, or other termination of existence or forfeiture of right to do business, (v) not form any Subsidiary or permit a merger or consolidation (unless Borrower is the surviving entity) or acquire all or substantially all of the assets of any other entity, and (vi) not amend the Company Agreement, without the prior written consent of Lender.

(b)    Manage the Collateral in an orderly and efficient manner consistent with good business practices, and perform and comply in all material respects with all statutes, rules, regulations, and ordinances imposed by any governmental unit upon the Collateral, Borrower, or its operations, including, without limitation, (i) all environmental laws, and (ii) all permits, licenses, registrations, approvals, and authorizations (x) related to any natural or environmental resource or media located on, above, within, related to or affected by any Collateral, (y) required for the performance of the operations of Borrower, or (z) applicable to the use, generation, handling, storage, treatment, transport, or disposal of any hazardous substances; use its best efforts to cause all employees, agents, contractors, subcontractors, while such are acting within the scope of their relationship with Borrower, to comply with all such laws as may be necessary or appropriate to enable Borrower to so comply; and not do anything or permit anything to be

512215.6 [July 25, 2016]

INDEPENDENCE FUEL SYSTEMS LLC
July 26, 2016
Page 10 of 25

done that would subject any of the Collateral to any remedial obligations under any environmental law, assuming disclosure to applicable governmental authorities of all relevant facts, conditions, and circumstances.

(c)    Maintain insurance as customary in the industry, including but not limited to, casualty insurance for not less than the value of the Collateral, comprehensive property damage and commercial general liability, and other insurance, including worker's compensation (if necessary to comply with law), naming Lender as an additional insured and a loss payee, as applicable, and containing provisions prohibiting their cancellation without prior written notice to Lender, and provide Lender with evidence of the continual coverage of those policies prior to the lapse of any policy.

(d)    Not sell, assign, transfer, or otherwise dispose of all or any interest in the Collateral, except for the sale of inventory in the ordinary course of business; and not sell, lease, assign, transfer, or otherwise dispose of (whether in one transaction or as a series of related transactions) all or substantially all of Borrower's assets.

(e)    Promptly inform Lender of (i) any Material Adverse Change, (ii) all litigation and claims which could reasonably be expected to cause a Material Adverse Change, (iii) all actual or contingent material liabilities of Borrower, (iv) any change in name, identity, or structure of Borrower, and (v) any uninsured or partially insured loss of any of the Collateral through fire, theft, liability, or property damage.

(f)    Maintain Borrower's books and records in accordance with GAAP, and permit Lender to examine, audit, and make and take away copies or reproductions of Borrower's books and records, reasonably required by Lender, at all reasonable times; and permit such persons as Lender may designate at reasonable times to visit, inspect, and appraise the Collateral and examine all records with respect to the Collateral, and pay for the reasonable cost of such examinations, audits, and inspections required by Lender.

(g)    Pay and discharge when due all indebtedness and obligations, including without limitation, all assessments, taxes, governmental charges, levies, and liens, of every kind and nature, imposed upon Borrower or the Collateral, prior to the date on which penalties would attach, and all lawful claims that, if unpaid, might become a lien or charge upon the Collateral, income, or profits, and pay all trade payables and other current liabilities incurred in the ordinary course of business within ninety (90) days of their due date; provided, however, Borrower will not be required to pay and discharge any such assessment, tax, charge, levy, lien, or claim so long as (i) the legality of the same shall be contested in good faith by appropriate judicial, administrative, or other legal proceedings, and (ii) Borrower has established adequate reserves

512215.6 [July 25, 2016]

INDEPENDENCE FUEL SYSTEMS LLC
July 26, 2016
Page 11 of 25

with respect to such contested assessment, tax, charge, levy, lien, or claim in accordance with GAAP.

(h)     Not directly or indirectly create, incur, assume, or permit to exist any indebtedness (including guaranties), secured or unsecured, absolute or contingent, except for the following (the "Permitted Indebtedness"):  (i) the indebtedness to Lender, (ii) any trade payables, taxes, and current liabilities incurred in the ordinary course of business, and (iii) purchase money loans and leases for vehicles and equipment in an aggregate amount not to exceed $200,000.00.

(i)     Not mortgage, assign, hypothecate, pledge, or encumber, and not create, incur, or assume any lien or security interest on or in, the Collateral or any of Borrower's property or assets, except the following (collectively the "Permitted Liens"):  (i) those in favor of Lender; (ii) liens for taxes, assessments, or other governmental charges or levies which are not delinquent or which are being contested in good faith by appropriate action and for which adequate reserves have been maintained in accordance with GAAP; (iii) statutory landlord's liens, operators', vendors', carriers', warehousemen's, repairmen's, mechanics', suppliers', workers', materialmen's, construction or other like liens arising by operation of law in the ordinary course of business, each of which is in respect of obligations that are not delinquent or which are being contested in good faith by appropriate action and for which adequate reserves have been maintained in accordance with GAAP; (iv) liens in connection with workers' compensation, unemployment insurance or other social security, or pension obligations, which are not delinquent or which are being contested in good faith by appropriate action and for which adequate reserves have been maintained in accordance with GAAP; (v) purchase money security interests, capital leases, or construction liens that attach solely to the asset acquired, leased, or constructed, that secure indebtedness in an amount equal to or less than the cost and the fair market value of the asset acquired, leased, or constructed, and that are in an aggregate amount not to exceed the debt amounts permitted above; (vi) contractual liens that arise in the ordinary course of business under or in connection with real property leases, development agreements, and other agreements which are usual and customary in Borrower's business and are for claims which are not delinquent or which are being contested in good faith by appropriate action and for which adequate reserves have been maintained in accordance with GAAP, provided that any such lien referred to in this clause does not materially impair the use of the property covered by such lien for the purposes for which such property is held by Borrower or materially impair the value of such property subject thereto; (vii) liens relating to banker's liens, rights of set-off, or similar rights and remedies and burdening only deposit accounts or other funds maintained with a depository institution, provided that no such deposit account is a dedicated cash collateral account or is subject to restrictions against access by the depositor, and no such deposit account is intended by Borrower to provide collateral to the depository institution; (viii) easements, restrictions, servitudes, permits, conditions, covenants, exceptions, or reservations for the purpose of roads, pipelines, transmission lines, transportation lines, or other like purposes, or for

512215.6 [July 25, 2016]

INDEPENDENCE FUEL SYSTEMS LLC
July 26, 2016
Page 12 of 25

the joint or common use of real estate, rights of way, facilities and equipment, that do not secure any monetary obligations and which in the aggregate do not materially impair the use of such property for the purposes of which such property is held by Borrower or materially impair the value of such property subject thereto; (ix) liens on cash or securities pledged to secure performance of tenders, surety and appeal bonds, government contracts, performance and return of money bonds, bids, trade contracts, leases, statutory obligations, regulatory obligations and other obligations of a like nature incurred in the ordinary course of business; and (x) liens arising under Uniform Commercial Code financing filings regarding operating leases which are not synthetic leases entered into by Borrower in the ordinary course of business covering only the property under such lease; provided, that liens described above shall remain "Permitted Liens" only for so long as no action to enforce such lien has been commenced and no intention to subordinate the first-priority lien granted in favor of the Lender is to be hereby implied or expressed by the existence of such Permitted Liens.

(j)     Not make any loans, advances, dividends, or other distributions to any party, including without limitation, shareholders, officers, directors, partners, joint venturers, members, managers, relatives, and affiliates, or any profit sharing or retirement plan, except so long as there is not an Event of Default existing and no Event of Default will be caused by the distribution, Borrower may distribute to its shareholders the following (the "Permitted Distributions"): (i) an amount equal annually to their tax liability incurred as a result of their ownership in Borrower, and (ii) such other amounts as Lender shall hereafter approve in writing.

(k)     Not purchase, acquire, redeem, or retire any stock or other ownership interest in Borrower; and not permit any transaction or contract with any affiliates or related parties, except at arms length and on market terms.

(l)     Maintain its primary depository accounts and principal banking relationship and treasury management services with Lender.

(m)     INDEMNIFY LENDER AGAINST ALL LOSSES, LIABILITIES, WITHHOLDING AND OTHER TAXES, CLAIMS, DAMAGES, OR EXPENSES RELATING TO THE LOANS, THE LOAN DOCUMENTS, OR BORROWER'S USE OF THE LOAN PROCEEDS, INCLUDING BUT NOT LIMITED TO ATTORNEYS AND OTHER PROFESSIONAL FEES AND SETTLEMENT COSTS, BUT EXCLUDING, HOWEVER, THOSE CAUSED SOLELY BY OR RESULTING SOLELY FROM ANY GROSS NEGLIGENCE OR WILLFUL MISCONDUCT BY LENDER; AND THIS INDEMNITY SHALL SURVIVE THE TERMINATION OF THIS LOAN AGREEMENT.

(n)     Comply in all material respects with all applicable provisions of ERISA, not violate any provision of any Plan, meet its minimum funding requirements under ERISA with

512215.6 [July 25, 2016]



INDEPENDENCE FUEL SYSTEMS LLC
July 26, 2016
Page 13 of 25

respect to each Plan, and notify Lender in writing of the occurrence and nature of any Reportable Event or Prohibited Transaction, each as defined in ERISA, or any funding deficiency with respect to any Plan.

(o)     Not (i) conduct any business or engage in any transaction or dealing with any Blocked Person, including the making or receiving of any contribution of funds, goods, or services to or for the benefit of any Blocked Person; (ii) deal in, or otherwise engage in any transaction relating to, any properties or assets or interests in properties or assets blocked pursuant to Executive Order No. 13224; or (iii) engage in or conspire to engage in any transaction that evades or avoids, or has the purpose of evading or avoiding, or attempts to violate, (x) any of the prohibitions set forth in Executive Order No. 13224 or the USA Patriot Act, or (y) any prohibitions set forth in the rules or regulations issued by OFAC.

(p)     If Borrower now or hereafter acquires any Subsidiary or owns any issued and outstanding capital stock, partnership, or membership interests of any Subsidiaries, Borrower shall sign and deliver to Lender within fifteen (15) days of Lender's written request a pledge agreement in Proper Form, creating a first-priority security interest covering the issued and outstanding capital stock, ownership, partnership, or membership interests of all existing and hereafter acquired Subsidiaries, and Borrower shall cause the Subsidiary to sign and deliver to Lender within fifteen (15) days of Lender's written request a guaranty in Proper Form, guaranteeing payment of the Secured Obligations.

(q)     Limit all investments to the following (the "Permitted Investments"):  (i) direct investments in Borrower's business and assets, (ii) deposits, money-market accounts, and certificates of deposit maintained with Lender, (iii) readily-marketable direct obligations of the United States of America, (iv) fully-insured time deposits and certificates of deposit with maturities of one (1) year or less of any other commercial bank operating in the United States having capital and surplus in excess of $400,000,000, or (v) commercial paper of a domestic issuer if at the time of purchase such paper is rated in one of the two highest ratings categories of Standard and Poor's Corporation or Moody's Investors Service.

(r)     Execute and deliver, or cause to be executed and delivered, any and all other agreements, instruments, or documents which Lender may reasonably request in order to give effect to the transactions contemplated under this Loan Agreement and the Loan Documents, and to grant, perfect, and maintain liens and security interests on or in the Collateral, and promptly cure any defects in the execution and delivery of any Loan Documents.

8.     Liquidity Covenant.  Until the Loans and all other Secured Obligations are fully paid and satisfied and any commitment of Lender under this Loan Agreement is terminated, Borrower shall cause DON NEUMEYER ("Neumeyer") to maintain, unless Lender otherwise

512215.6 [July 25, 2016]

INDEPENDENCE FUEL SYSTEMS LLC
July 26, 2016
Page 14 of 25

consents in writing, the following liquidity covenant at all times, but to be calculated as of the end of each fiscal quarter:

      (a)    Neumeyer shall maintain Liquid Assets having a value of not less than $2,000,000.00. If the value of Neumeyer's Liquid Assets falls below this requirement at any time, it shall be an Event of Default under this Loan Agreement.

      (b)    For the purposes of this liquidity covenant, the terms below have the definitions assigned:

      (i)    "Cash Equivalents" means the sum of the following assets owned by Neumeyer, free and clear of all claims, liens, security interests, pledges, restrictions, or encumbrances of any kind, and valued at their current liquidation value as of the date of compliance: (i) cash on hand or on deposit in commercial banks of recognized standing operating in the United States, (ii) readily-marketable securities issued by the United States government, (iii) readily-marketable commercial paper rated "A1" by Standard & Poor's (or similar rating), and (iv) certificates of deposit and banker's acceptances issued by commercial banks of recognized standing operating in the United States.

      (ii)    "Liquid Assets" means the sum of Neumeyer's Cash Equivalents, plus Neumeyer's Securities, free and clear of all claims, liens, security interests, pledges, restrictions, or encumbrances of any kind.

      (iii)    "Securities" means Neumeyer's negotiable securities traded on any of the New York Stock Exchange, the American Stock Exchange, or the NASDAQ National Market, valued at Market Value as of the date of compliance, free and clear of all claims, liens, security interests, pledges, restrictions, or encumbrances of any kind.

      (iv)    "Market Value" means that aggregate closing price of all shares of all Securities as quoted in the *The Wall Street Journal* as of the date of compliance.

Unless otherwise specified, all accounting and financial terms and covenants set forth above are to be determined according to GAAP.

512215.6 [July 25, 2016]



INDEPENDENCE FUEL SYSTEMS LLC
July 26, 2016
Page 15 of 25

    9.    <u>Reporting Requirements</u>.  (a) Until the Loans and all other Secured Obligations are fully paid and satisfied and any commitment of Lender under this Loan Agreement is terminated, Borrower shall, unless Lender otherwise consents in writing, furnish to Lender in Proper Form:

        (1)    As soon as available, and within one hundred twenty (120) days of the end of Borrower's fiscal year, annual financial statements for Borrower, consisting of at least a balance sheet, an income statement, a statement of cash flows, a statement of operations, a statement of changes in shareholders' equity, and a statement of contingent liabilities, certified by an authorized officer of Borrower (i) as being true and correct in all material aspects to the best of his knowledge, (ii) as fairly reporting the financial condition of Borrower as of the close of the fiscal year and the results of its operations for the year, and (iii) as having been prepared in accordance with GAAP;

        (2)    As soon as available, and within forty-five (45) days of the end of the each fiscal quarter, quarterly financial statements for Borrower, consisting of at least a balance sheet, an income statement, a statement of cash flows, a statement of operations, a statement of changes in shareholders' equity, and a statement of contingent liabilities, for the quarter and for the period from the beginning of the fiscal year to the close of the quarter, certified by an authorized officer of Borrower (i) as being true and correct in all material aspects to the best of his knowledge, (ii) as fairly reporting the financial condition of Borrower as of the close of the fiscal quarter and the results of its operations for the quarter, and (iii) as having been prepared in accordance with GAAP;

        (3)    Within fifteen (15) days of filing, copies of Borrower's federal income tax returns, with all schedules and exhibits;

        (4)    Within one (1) day after Borrower learns of any such occurrence, a written report of any pending or threatened litigation which would reasonably be expected to cause a Material Adverse Change or which asserts damages or claims in an amount in excess of $100,000;

        (5)    As soon as possible and in any event within five (5) days after the occurrence of any Event of Default, or any event which, with the giving of notice or lapse of time or both, would constitute an Event of Default, the written statement of the President or the Chief Financial Officer of Borrower setting forth the details of such Event of Default and the action which Borrower proposes to take with respect thereto; and

512215.6 [July 25, 2016]



INDEPENDENCE FUEL SYSTEMS LLC
July 26, 2016
Page 16 of 25

(6)　　Such other information respecting the condition and the operations, financial or otherwise, of Borrower and the Collateral as Lender may from time to time reasonably request.

(b)　　Until the Loans and all other obligations and liabilities of Guarantors under this Loan Agreement, the Guaranties, and the other Loan Documents are fully paid and satisfied, Borrower shall cause each of the Guarantors to furnish, unless Lender otherwise consents in writing, to Lender in Proper Form:

(1)　　On or before the date that is one (1) month after the anniversary date of such prior statement furnished to Lender, current personal financial statements for each of the Guarantors, consisting of at least a balance sheet, a statement of cash flow, and a statement of contingent liabilities, and being certified (i) as being true and correct in all material aspects to the best of their knowledge, and (ii) as having been prepared in accordance with Accounting Principles;

(2)　　Within thirty (30) days after the end of each quarter, Neumeyer shall deliver to Lender a liquidity compliance certificate in the form of Exhibit C attached, signed by Neumeyer and certifying compliance with this liquidity covenant, and attaching copies of brokerage account statements, bank account statements, lists and values of all Liquid Assets, and such other matters as Lender may reasonably require to evidence Neumeyer's compliance with this liquidity covenant;

(3)　　Within fifteen (15) days of filing, copies of each Guarantors' federal income tax returns, with all schedules and exhibits; and

(4)　　Such other information respecting the condition and the operations, financial or otherwise, of each of the Guarantors as Lender may from time to time reasonably request.

10.　　Events of Default.  (a)  The occurrence at any time of any of the following events or the existence of any of the following conditions shall be called an "Event of Default":

(1)　　Failure to make punctual payment when due of any sums owing on any of the Notes or any other Secured Obligations; or

(2)　　Failure of any of the Obligated Parties (as defined below) to properly perform in all material respects any of the obligations, covenants, or agreements, contained in this Loan Agreement or any of the other Loan Documents; or any representation or

512215.6 [July 25, 2016]

INDEPENDENCE FUEL SYSTEMS LLC
July 26, 2016
Page 17 of 25

warranty made by Borrower or Guarantors proves to have been false, misleading, or erroneous in any material respect; or

(3)   Levy, execution, attachment, sequestration, or other writ against any real or personal property, representing the security for the Secured Obligations; or

(4)   Any "Event of Default" under the Notes or any of the other Loan Documents, the Events of Default defined in the Notes and Loan Documents being cumulative to those contained in this Loan Agreement; or

(5)   The transfer, whether voluntarily or by operation of law, of all or any portion of the Collateral, without obtaining Lender's partial release, or except as specifically permitted by this Loan Agreement; or

(6)   The failure of any of the Obligated Parties to pay any money judgment in excess of $50,000.00, against that party before the expiration of thirty (30) days after the judgment becomes final; or

(7)   Borrower's liquidation, termination of existence, merger or consolidation with another (unless Borrower is the surviving entity), forfeiture of right to do business, or appointment of a trustee or receiver for any part of its property or the filing of an action seeking to appoint a trustee or receiver; or

(8)   The failure of any of the Obligated Parties to obtain dismissal within ninety (90) days of any involuntary proceeding filed against that party under any Debtor Relief Laws (as defined below); or

(9)   A filing by any of the Obligated Parties of a voluntary petition in bankruptcy, or taking advantage of any Debtor Relief Laws; or an answer admitting the material allegations of a petition filed against any of the Obligated Parties, under any Debtor Relief Laws; or an admission by any of the Obligated Parties in writing of an inability to pay its or their debts as they become due; or the calling of any meeting of creditors of any of the Obligated Parties for the purpose of considering an arrangement or composition; or

(10)   The death or legal incapacity of any of the Guarantors; or

(11)   Any of the Obligated Parties revokes, or disputes the validity of or liability under, any of the Loan Documents, including any guaranty or security document.

512215.6 [July 25, 2016]



INDEPENDENCE FUEL SYSTEMS LLC
July 26, 2016
Page 18 of 25

(b)      The term "Obligated Parties" means Borrower, Guarantors, or any of them, any other party liable, in whole or in part, for the payment of any of the Secured Obligations, whether as maker, endorser, guarantor, surety, or otherwise, and any party executing any deed of trust, mortgage, security agreement, pledge agreement, assignment, or other contract of any kind executed as security in connection with or pertaining to the Secured Obligations, the Notes, or the Loans. The term "Debtor Relief Laws" means any applicable liquidation, conservatorship, receivership, bankruptcy, moratorium, rearrangement, insolvency, reorganization, or similar laws affecting the rights or remedies of creditors generally, as in effect from time to time.

11.      Remedies. (a) Upon the occurrence of any one or more of the foregoing Events of Default and the expiration of any notice, cure, or grace period required by subsection (b) below, the entire unpaid principal balances of the Notes, together with all accrued but unpaid interest thereon, and all other indebtedness then owing by Borrower to Lender, shall, at the option of Lender, become immediately due and payable without further presentation, demand for payment, notice of intent to accelerate, notice of acceleration or dishonor, protest or notice of protest of any kind, all of which are expressly waived by Borrower. Any and all rights and remedies of Lender pursuant to this Loan Agreement or any of the other Loan Documents may be exercised by Lender, at its option, upon the occurrence of an Event of Default and the expiration of any notice, cure, or grace period required by subsection (b) below. All remedies of Lender may be exercised singularly, concurrently, or consecutively, without waiver or election.

(b)      Upon any Event of Default described in Subsection 10 (a)(1) above regarding payment of sums owing to Lender, Borrower shall have five (5) days grace after the due date in the invoice provided to Borrower in order to cure the Event of Default prior to acceleration of the Notes and exercise of any remedies. Upon any other Event of Default described in Subsection 10 (a) above, Lender shall provide Borrower with written notice of the default and Borrower shall have ten (10) days after notice in order to cure the Event of Default prior to acceleration of the Notes and exercise of any remedies; except Borrower shall have no cure period for any voluntary filing by Borrower under any Debtor Relief Laws, for any liquidation or termination of existence of Borrower, or for any Event of Default that is not capable of cure during that period, including, without limitation, breaches of any negative covenant or breaches of any financial covenant, and provided that Lender is not obligated to provide written notice of any Event of Default which Borrower reports to Lender, but Borrower shall have the benefit of any applicable grace or cure period required herein.

(c)      All rights of Lender under the terms of this Loan Agreement shall be cumulative of, and in addition to, the rights of Lender under any and all other agreements between Borrower and Lender (including, but not limited to, the other Loan Documents), and not

512215.6 [July 25, 2016]



INDEPENDENCE FUEL SYSTEMS LLC
July 26, 2016
Page 19 of 25

in substitution or diminution of any rights now or hereafter held by Lender under the terms of any other agreement.

12.   Waiver and Amendment.   Neither the failure nor any delay on the part of Lender to exercise any right, power, or privilege herein or under any of the other Loan Documents shall operate as a waiver thereof, nor shall any single or partial exercise of such right, power, or privilege preclude any other or further exercise thereof or the exercise of any other right, power, or privilege.  No waiver of any provision in this Loan Agreement or in any of the other Loan Documents and no departure by Borrower therefrom shall be effective unless the same shall be in writing and signed by Lender, and then shall be effective only in the specific instance and for the purpose for which given and to the extent specified in such writing.  No modification or amendment to this Loan Agreement or to any of the other Loan Documents shall be valid or effective unless the same is signed by the party against whom it is sought to be enforced.

13.   Savings Clause.   Regardless of any provision contained in this Loan Agreement, the Notes, or any of the Loan Documents, it is the express intent of the parties that at no time shall Borrower or any of the Obligated Parties pay interest in excess of the Maximum Rate (or any other interest amount which might in any way be deemed usurious), and Lender will never be considered to have contracted for or to be entitled to charge, receive, collect, or apply as interest on any of the Notes, any amount in excess of the Maximum Rate (or any other interest amount which might in any way be deemed usurious).  In the event that Lender ever receives, collects, or applies as interest any such excess, the amount which would be excessive interest will be applied to the reduction of the principal balances of the Notes or the Secured Obligations, and, if the principal balances of the Notes and the Secured Obligations are paid in full, any remaining excess shall forthwith be paid to Borrower.  In determining whether the interest paid or payable exceeds the Maximum Rate (or any other interest amount which might in any way be deemed usurious), Borrower and Lender shall, to the maximum extent permitted under applicable law: (i) characterize any non-principal payment (other than payments which are expressly designated as interest payments hereunder) as an expense or fee rather than as interest; (ii) exclude voluntary prepayments and the effect thereof; and (iii) amortize, pro rate, or spread the total amount of interest throughout the entire contemplated term of the Notes so that the interest rate is uniform throughout the term.  The term "Maximum Rate" means the maximum interest rate which may be lawfully charged under applicable law.

512215.6 [July 25, 2016]

INDEPENDENCE FUEL SYSTEMS LLC
July 26, 2016
Page 20 of 25

    14.    <u>Notices</u>.  Any notice or other communications provided for in this Loan Agreement shall be in writing and shall be given to the party at the address shown below:

| Lender: | ORIGIN BANK |
| | Attention: Curtis Hamilton, |
| | Commercial Banking Manager/Senior Vice President |
| | 500 Throckmorton Street, Suite 350 |
| | Fort Worth, Texas 76102 |
| | Fax Number (817) 665-6831 |
| | E-mail: chamilton@originbankonline.com |

| With a copy to counsel for Lender: | Paul D. Bradford |
| | HARRIS, FINLEY & BOGLE, P.C. |
| | 777 Main Street, Suite 1800 |
| | Fort Worth, Texas  76102-5341 |
| | Fax Number (817) 332-6121 |
| | E-mail: pbradford@hfblaw.com |

| Borrower: | INDEPENDENCE FUEL SYSTEMS LLC |
| | Attention: R. Kevin Russell, Chief Executive Officer |
| | 515 N. Fredonia Street |
| | Longview, Texas  75601 |
| | Fax Number (___) _____ |
| | E-mail: toledogas@msn.com |

Any such notice or other communication shall be deemed to have been given on the day it is personally delivered or, if mailed, on the third day after it is deposited in an official receptacle for the United States mail, or, if by electronic mail or facsimile, on the date it is received by the party.  Any party may change its address for the purposes of this Loan Agreement by giving notice of such change in accordance with this paragraph.

    15.    <u>Miscellaneous</u>.  (a) This Loan Agreement shall be binding upon and inure to the benefit of Lender, Borrower, and Guarantors, and their respective heirs, personal representatives, successors, and assigns; provided, however, that Borrower and Guarantors may not, without the prior written consent of Lender, assign any rights, powers, duties, or obligations under this Loan Agreement or any of the other Loan Documents.

512215.6 [July 25, 2016]

INDEPENDENCE FUEL SYSTEMS LLC
July 26, 2016
Page 21 of 25

(b)     If any provision of this Loan Agreement or any other Loan Documents is held to be illegal, invalid, or unenforceable under present or future laws, such provision shall be fully severable and the remaining provisions of this Loan Agreement or any of the other Loan Documents shall remain in full force and effect and shall not be affected by the illegal, invalid, or unenforceable provision or by its severance.

(d)     All covenants, agreements, undertakings, representations, and warranties made in this Loan Agreement and the other Loan Documents shall survive any closing hereunder.

(e)     All documents delivered by Borrower or Guarantors to Lender must be in Proper Form.  The term "Proper Form" means in form, substance, and detail satisfactory to Lender in its sole discretion.

(f)     Without limiting the effect of any provision of any Loan Document which provides for the payment of expenses and attorneys fees upon the occurrence of certain events, Borrower shall pay all costs and expenses (including, without limitation, the reasonable attorneys fees of Lender's inside or independent legal counsel) in connection with (i) the preparation of this Loan Agreement and the other Loan Documents, and any and all extensions, renewals, amendments, supplements, extensions, or modifications thereof, (ii) any action reasonably required in the course of administration of the Loans or the Secured Obligations, (iii) resolution of any disputes with Borrower or Guarantors related to the Loans, the Secured Obligations, or this Loan Agreement, and (iv) any action in the enforcement of Lender's rights upon the occurrence of an Event of Default.

(g)     If there is a conflict between the terms of this Loan Agreement and the terms of any of the other Loan Documents, the terms of this Loan Agreement will control.

(h)     Lender shall have the right, with the consent of Borrower (unless an Event of Default has occurred and is continuing, in which case no consent is needed), which will not be unreasonably withheld, (i) to assign the Loans or commitment and be released from liability thereunder, and (ii) to transfer or sell participations in the Loans or commitment with the transferability of voting rights limited to principal, rate, fees, and term; provided, however, that Lender shall have the right to make intercompany assignments to affiliates, without restriction or consent.

(i)     This Loan Agreement may be separately executed in any number of counterparts, each of which will be an original, but all of which, taken together, shall be deemed to constitute one agreement, and Lender is authorized to attach the signature pages from the counterparts to copies for Lender and Borrower.  At Lender's option, this Loan Agreement and the Loan Documents may also be executed by Borrower and Guarantors in remote locations with

512215.6 [July 25, 2016]



INDEPENDENCE FUEL SYSTEMS LLC
July 26, 2016
Page 22 of 25

signature pages faxed or scanned and e-mailed to Lender. Borrower and Guarantors agree that the faxed or scanned signatures are binding upon Borrower and Guarantors, and Borrower and Guarantors further agree to promptly deliver the original signatures for this Loan Agreement and all Loan Documents by overnight mail or expedited delivery. It will be an Event of Default if they fail to promptly deliver all required original signatures.

16.    Governing Law; Venue; and Waivers.  (a) **THIS LOAN AGREEMENT, ADVANCE NOTE, AND EACH OTHER LOAN DOCUMENT, AND ALL MATTERS RELATING HERETO OR THERETO OR ARISING THEREFROM (WHETHER SOUNDING IN CONTRACT LAW, TORT LAW, OR OTHERWISE), SHALL BE GOVERNED BY, AND SHALL BE CONSTRUED AND ENFORCED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF TEXAS, WITHOUT REGARD TO CONFLICTS OF LAWS PRINCIPLES. EACH OF BORROWER AND GUARANTORS HEREBY CONSENTS TO THE JURISDICTION OF ANY STATE OR FEDERAL COURT LOCATED WITHIN THE COUNTY OF TARRANT, STATE OF TEXAS AND IRREVOCABLY AGREES THAT, SUBJECT TO LENDER'S ELECTION, ALL ACTIONS OR PROCEEDINGS ARISING OUT OF OR RELATING TO THIS LOAN AGREEMENT OR THE OTHER LOAN DOCUMENTS SHALL BE LITIGATED IN SUCH COURTS. EACH OF BORROWER AND GUARANTORS EXPRESSLY SUBMITS AND CONSENTS TO THE JURISDICTION OF THE AFORESAID COURTS AND WAIVES ANY DEFENSE OF FORUM NON CONVENIENS. EACH OF BORROWER AND GUARANTORS HEREBY WAIVES PERSONAL SERVICE OF ANY AND ALL PROCESS AND AGREES THAT ALL SUCH SERVICE OF PROCESS MAY BE MADE UPON BORROWER AND GUARANTORS BY CERTIFIED OR REGISTERED MAIL, RETURN RECEIPT REQUESTED, ADDRESSED TO BORROWER OR GUARANTORS AT THE ADDRESSES SET FORTH IN THIS LOAN AGREEMENT AND SERVICE SO MADE SHALL BE COMPLETE TEN (10) DAYS AFTER THE SAME HAS BEEN POSTED.**

(b)    **WAIVER OF JURY TRIAL. EACH OF BORROWER, GUARANTORS, AND LENDER HEREBY IRREVOCABLY WAIVES ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY LEGAL ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THIS LOAN AGREEMENT OR THE OTHER LOAN DOCUMENTS OR THE TRANSACTIONS CONTEMPLATED HEREBY AND THEREBY AND AGREES THAT ANY SUCH ACTION OR PROCEEDING SHALL BE TRIED BEFORE A COURT AND NOT BEFORE A JURY.**

(c)    **WAIVER OF SPECIAL DAMAGES. EACH OF BORROWER AND LENDER HEREBY KNOWINGLY, VOLUNTARILY, INTENTIONALLY, AND IRREVOCABLY WAIVES, TO THE MAXIMUM EXTENT IT MAY LAWFULLY AND**

512215.6 [July 25, 2016]

INDEPENDENCE FUEL SYSTEMS LLC
July 26, 2016
Page 23 of 25

**EFFECTIVELY DO SO, ANY RIGHT IT MAY HAVE TO CLAIM OR RECOVER IN ANY LITIGATION OR DISPUTE RELATED TO THIS LOAN AGREEMENT OR ANY OF THE LOAN DOCUMENTS, OR DIRECTLY OR INDIRECTLY AT ANY TIME ARISING OUT OF, UNDER OR IN CONNECTION WITH ANY TRANSACTION CONTEMPLATED THEREBY OR ASSOCIATED THEREWITH, ANY SPECIAL, CONSEQUENTIAL, EXEMPLARY, OR PUNITIVE DAMAGES (REGARDLESS OF HOW NAMED), OR DAMAGES OTHER THAN, OR IN ADDITION TO, ACTUAL DAMAGES (collectively "Special Damages").**

**(d)      EACH OF BORROWER, GUARANTORS, AND LENDER ACKNOWLEDGES THAT THE AGREEMENTS AND WAIVER IN THIS SECTION 16 ARE A MATERIAL INDUCEMENT TO ENTER INTO A BUSINESS RELATIONSHIP, THAT EACH HAS RELIED ON THE AGREEMENTS AND WAIVERS IN ENTERING INTO THIS LOAN AGREEMENT AND THE OTHER LOAN DOCUMENTS, AND THAT EACH WILL CONTINUE TO RELY ON THE AGREEMENTS AND WAIVERS IN THEIR RELATED FUTURE DEALINGS.  EACH OF BORROWER, GUARANTORS, AND LENDER WARRANTS AND REPRESENTS THAT EACH HAS HAD THE OPPORTUNITY OF REVIEWING THESE AGREEMENTS AND WAIVERS WITH LEGAL COUNSEL, AND THAT EACH KNOWINGLY AND VOLUNTARILY WAIVES ITS JURY TRIAL RIGHTS AND SPECIAL DAMAGES.**

512215.6 [July 25, 2016]

INDEPENDENCE FUEL SYSTEMS LLC
July 26, 2016
Page 24 of 25

17.   Notice of Final Agreement.  (a)  In connection with the Loans, Borrower, Guarantors, and Lender have executed and delivered this Loan Agreement and the Loan Documents (collectively the "Written Loan Agreement").

(b)   It is the intention of Borrower, Guarantors, and Lender that this paragraph be incorporated by reference into each of the Loan Documents.  Borrower, Guarantors, and Lender each warrant and represent that their entire agreement with respect to the Loans is contained within the Written Loan Agreement, and that no agreements or promises have been made by, or exist by or among, Borrower, Guarantors, and Lender that are not reflected in the Written Loan Agreement.

(c)   THE WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.  THERE ARE NO UNWRITTEN AGREEMENTS BETWEEN THE PARTIES.

If the foregoing correctly sets forth our agreement, please so acknowledge by signing and returning the additional copy of this Loan Agreement enclosed to me.

Yours very truly,

ORIGIN BANK

By:   _Curtis Hamilton_____
Curtis Hamilton,
Commercial Banking Manager/
Senior Vice President

512215.6 [July 25, 2016]

INDEPENDENCE FUEL SYSTEMS LLC
July 26, 2016
Page 25 of 25


Accepted and agreed to
this 2 6 day of July, 2016:

BORROWER:

INDEPENDENCE FUEL SYSTEMS LLC

By: _____
     R. Kevin Russell,
     Chief Executive Officer


512215.6 [July 25, 2016]


Exhibits and Schedules
Exhibit A - Advance Note
Exhibit B - Request for Borrowing
Exhibit C - Liquidity Compliance Certificate
Schedule 1 - Organizational Chart


512215.6 [July 25, 2016]

# EXHIBIT A

 **Origin Bank**  

## ADVANCE PROMISSORY NOTE

| | | |
|---|---|---|
| $3,500,000.00 | Fort Worth, Texas | July 26, 2016 |

    **Promise to Pay.** For value received, INDEPENDENCE FUEL SYSTEMS LLC ("Borrower"), a Texas limited liability company, promises to pay to the order of ORIGIN BANK ("Lender"), at its offices in Tarrant County, Texas, at 500 Throckmorton Street, Suite 350, Fort Worth, Texas 76102, the sum of Three Million Five Hundred Thousand Dollars ($3,500,000.00) ("Maximum Commitment"), in legal and lawful money of the United States of America, together with interest thereon from this date until maturity at a fluctuating rate per annum equal to the lesser of (a) the sum of the Prime Rate in effect from day to day, plus two percent (2.0%)(the "Contract Rate"); or (b) the Maximum Rate. "Prime Rate" shall mean *The Wall Street Journal* as the "prime rate" on corporate loans for large U.S. commercial banks, as published in the Money Rates section of *The Wall Street Journal,* computed on the basis of a year of 360 days and for the actual number of days elapsed (including the first day but excluding the last day); and "Maximum Rate" shall mean at the particular time in question the maximum rate of interest which, under applicable law, may then be charged on this Advance Note.

    **Payment Terms.** This Advance Note is due and payable on the terms set out below:

    (a)    interest only shall be due and payable monthly as it accrues, commencing on the 26th day of August, 2016, and continuing on the 26th day of each successive month thereafter through July 26, 2017; and

    (b)    the principal of and interest on this Advance Note shall be due and payable in equal monthly installments sufficient to amortize the then outstanding principal balance of this Advance Note over an amortization period of ten (10) years (the "Amortization Period") at the then applicable Contract Rate, commencing on the 26th day of August, 2017, and continuing on the 26th day of each successive month thereafter; and

    (c)    The monthly installment will adjust annually, and Lender may recalculate the monthly installment amount effective on the 26th day of July of each year, to an amount sufficient to amortize the remaining balance over the remaining Amortization Period at the then-current interest rate.

    (d)    the outstanding principal balance of this Advance Note, together with all accrued but unpaid interest, shall be due and payable on the Maturity Date. Unless its maturity is sooner accelerated as set forth herein, this Advance Note will mature on July 26, 2021 (the "Maturity Date"), at which time all unpaid sums then owing will be payable in full, principal and interest.

This Advance Note may be prepaid in whole or in part at any time without premium or penalty.

512627.2[July 25, 2016]        Advance Promissory Note - Page 1 of 5

Security.  Payment hereof is secured by the following (collectively the "Loan Documents"):  (1) obligations under a Loan Agreement of even date, executed by Borrower and Lender, as now or hereafter amended, restated, replaced, supplemented, or otherwise modified, from time to time (the "Loan Agreement"); and (2) all Security Documents (as defined in the Loan Agreement).

Payments.  Unless otherwise agreed to in writing or otherwise required by applicable law, payments will be applied first to unpaid accrued interest, then to principal, and any remaining amount to any unpaid collection costs, delinquency charges, and other charges; provided, however, upon delinquency or other Event of Default, Lender reserves the right to apply payments among principal, interest, delinquency charges, collection costs, and other charges, in such order and manner as the holder of this Advance Note may from time to time determine in its sole discretion.  All payments and prepayments of principal of or interest on this Advance Note shall be made in lawful money of the United States of America in immediately available funds, at the address of Lender indicated above, or such other place as the holder of this Advance Note shall designate in writing to Borrower.  If any payment of principal of or interest on this Advance Note shall become due on a day which is not a Business Day (as defined below), such payment shall be made on the next succeeding Business Day and any such extension of time shall be included in computing interest in connection with such payment.  As used herein, the term "Business Day" shall mean any day other than a Saturday, Sunday, or any other day on which national banking associations are authorized to be closed.  The books and records of Lender shall be prima facie evidence of all outstanding principal of and accrued and unpaid interest on this Advance Note.

Advances.  Borrower may request advances from Lender in accordance with the Loan Agreement, provided that the aggregate principal amount advanced under this Advance Note shall not exceed the Maximum Commitment.

Interest on Past Due Amounts and Default Interest.  To the extent any interest is not paid on or before the date it becomes due and payable, Lender may, at its option, add such accrued but unpaid interest to the principal of this Advance Note.  Notwithstanding anything herein to the contrary, (i) while any Event of Default (as defined below) is outstanding, (ii) upon acceleration of the maturity hereof following an uncured Event of Default, or (iii) at the Maturity Date, all principal of this Advance Note shall, at the option of Lender, bear interest at the Maximum Rate until paid.

Late Charge.  At the option of Lender, Borrower will pay Lender, on demand, (i) a "late charge" equal to five percent (5%) of the amount of any installment on this Advance Note when such installment is not paid within fifteen (15) days following the date such installment is due, and (ii) a processing fee in the amount of $38.00 for each check which is provided to Lender by Borrower in payment for an obligation owing to Lender under any Loan Document but is returned or dishonored for any reason, in order to cover the additional expenses involved in handling delinquent and returned or dishonored payments.

Events of Default.  The occurrence at any time of any of the following events or the existence of any of the following conditions shall collectively be called "Events of Default" or singly called an "Event of Default":

(a)     Failure to make punctual payment when due of any sums owing on this Advance Note; or

(b)    Any "Event of Default" under the Loan Agreement, the Events of Default defined in the Loan Agreement being cumulative to those contained in this Advance Note.

Remedies.  Upon an Event of Default, and Borrower's failure to timely cure such default following any notice, cure, or grace period required by the Loan Agreement, at the option of Lender the entire indebtedness evidenced hereby, as well as all other liabilities of Borrower to Lender, shall be matured without further notice, and Lender may exercise any or all of the rights and remedies available to it, including, without limitation, those under this Advance Note, the Loan Documents, and any other instrument or agreement relating hereto, or any one or more of them.  The failure of Lender to exercise its option to accelerate the maturity of this Advance Note shall not constitute a waiver of its right to exercise the same at any other time.  Any Event of Default under this Advance Note shall constitute a default under each of the Loan Documents, and any default under any of the Loan Documents shall constitute an Event of Default under this Advance Note.

Waiver.  Except such notice of default as is specifically required by the Loan Agreement, Borrower and all other Obligated Parties severally waive the order of their liability, the marshaling of assets, demand, presentment for payment, notice of dishonor, protest and notice of protest, notice of default, notice of intent to accelerate maturity, and notice of the acceleration.  Borrower and all other Obligated Parties agree to all renewals and extensions of this Advance Note and partial payments and releases or substitutions of security, in whole or in part, with or without notice, before or after maturity.  In case of any renewal or extension of this Advance Note or any part of the indebtedness evidenced hereby, all liens and security interests securing payment hereof will continue to secure payment of the renewal or extension note or notes.

Business Loan.  Borrower represents to and covenants with Lender that: (1) all loans evidenced by this Advance Note are and shall be "business loans" as that term is used in the Depository Institutions Deregulation and Monetary Control Act of 1980, as amended; and (2)  the loans are for business, commercial, investment, or other similar purposes and not for personal, family, household, or agricultural use, as those terms are used in the Texas Finance Code.  Borrower and Lender further agree that Chapter 346 of the Texas Finance Code does not apply to this Advance Note, even if this Advance Note evidences a revolving debt.

Collection Costs.  If this Advance Note is placed in the hands of attorneys for collection, if suit is filed hereon, if this Advance Note is collected through bankruptcy proceedings (including any proceeding, federal or state, for the relief of debtors), or if Lender becomes a party either as plaintiff or defendant in any legal proceeding in relation to the property securing payment of this Advance Note, Borrower agrees to pay additionally to Lender reasonable attorneys fees and collection costs.

Savings Clause.  Regardless of any provision contained in this Advance Note, the Loan Documents, or any instrument executed or delivered in connection herewith, it is the express intent of the parties that at no time shall any of the Obligated Parties pay interest in excess of the Maximum Rate (or any other interest amount which might in any way be deemed usurious), and Lender will never be considered to have contracted for or to be entitled to charge, receive, collect, or apply as interest on this Advance Note, any amount in excess of the Maximum Rate (or any other interest amount which might in any way be deemed usurious), and, in the event that Lender ever receives, collects, or applies as interest any such excess, the amount which would be excessive interest will be applied to the reduction of the principal balance of this Advance Note, and, if the principal balance of this Advance Note is paid in full, any remaining excess shall forthwith be paid to Borrower.  In determining whether the interest paid or payable exceeds the Maximum Rate (or any other interest amount which might in any way be deemed usurious), Borrower and Lender shall, to the maximum extent permitted under applicable law: (1)  characterize any non-principal payment (other

than payments which are expressly designated as interest payments hereunder) as an expense or fee rather than as interest; (2) exclude voluntary prepayments and the effect thereof; and (3) spread the total amount of interest throughout the entire contemplated term of this Advance Note so that the interest rate is uniform throughout the term.

Miscellaneous. EXCEPT TO THE EXTENT THAT THE LAWS OF THE UNITED STATES MAY APPLY, THIS ADVANCE NOTE SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF TEXAS.    THIS INSTRUMENT IS MADE AND IS PERFORMABLE IN FORT WORTH, TARRANT COUNTY, TEXAS, AND IN THE EVENT OF A DISPUTE INVOLVING THIS ADVANCE NOTE OR ANY OTHER INSTRUMENT EXECUTED IN CONNECTION HEREWITH, BORROWER IRREVOCABLY AGREES THAT VENUE FOR SUCH DISPUTES SHALL BE IN ANY COURT OF COMPETENT JURISDICTION IN TARRANT COUNTY, TEXAS.

Time is of the essence of this Advance Note.

This Advance Note may not be changed orally, but only by an agreement in writing signed by the party against whom enforcement of any waiver, change, modification, or discharge is sought.

This Advance Note and all the covenants, promises, and agreements contained herein are binding upon and inure to the benefit of Borrower and Lender and their respective heirs, personal representatives, successors, and assigns.

Section headings or captions are for convenience only and are not to be used in interpreting the provisions of this Advance Note.

Notice of Final Agreement.  (a) In connection with this Advance Note, Borrower and Lender have executed and delivered the Loan Agreement, the Deed of Trust, and the other Loan Documents (collectively the "Written Loan Agreement").

(b)        It is the intention of Borrower and Lender that this section be incorporated into each of the documents comprising the Written Loan Agreement.  Borrower warrants and represents to Lender that their entire agreement with respect to the loan represented by this Advance Note is contained within the Written Loan Agreement, and that no agreements or promises have been made by, or exist between, Borrower and Lender that are not reflected in the Written Loan Agreement.

(c)    THE WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.

(d)    THERE ARE NO UNWRITTEN AGREEMENTS BETWEEN THE PARTIES.

Executed and delivered to Lender in Fort Worth, Texas, on the date stated above.

INDEPENDENCE FUEL SYSTEMS, LLC

By: _____
R. Kevin Russell,
Chief Executive Officer

512627.2 [July 25, 2016]

This Advance Note was prepared by:
HARRIS, FINLEY & BOGLE, P.C.
777 Main Street, Suite 1800
Fort Worth, Texas 76102-5341
(817) 870-8700

# EXHIBIT B

 **Origin Bank**

## REQUEST FOR BORROWING

Pursuant to the Loan Agreement dated July 26, 2016, among INDEPENDENCE FUEL SYSTEMS LLC ("Borrower"), a Texas limited liability company, and ORIGIN BANK ("Lender"), a Louisiana state banking association, as now or hereafter amended, restated, replaced, supplemented, or otherwise modified, from time to time (collectively the "Loan Agreement"), Borrower hereby requests an advance on the Advance Loan as set forth below.  Capitalized terms herein have the meanings assigned in the Loan Agreement, the Advance Note, and the Second Advance Note (as defined therein).

Pursuant to the terms of the Loan Agreement, Borrower hereby requests from Lender an advance on the Second Advance Loan

in the amount of $_____

to be advanced on _____ , 201__

Borrower hereby certifies to Lender that:

(a)     The undersigned officer is a duly-elected, qualified, and acting officer of Borrower and is authorized to request the advance on the Second Advance Loan set forth above.

(b)     The representations and warranties of Borrower set forth in Section 5 of the Loan Agreement are true and correct on and as of the date of this Request for Borrowing, with the same effect as though such representations and warranties had been made on and as of the date of this Request for Borrowing; and as of the date of this Request for Borrowing, Borrower is in compliance with all covenants set forth in Section 7 of the Loan Agreement and all reporting requirements set forth in Section 9 of the Loan Agreement.  Since the date of the Loan Agreement, there has not occurred any Material Adverse Change.

(c)     There does not exist on the date of this Request for Borrowing, any condition or event which constitutes an Event of Default, nor will any such Event of Default exist upon Borrower's receipt and application of the proceeds requested hereby.

(d)     Borrower will use the proceeds of the requested borrowing in compliance with the applicable provisions of the Loan Agreement.

(e)     Borrower has performed and complied with all conditions in the Loan Agreement required to be performed or complied with on or prior to the date of this Request for Borrowing, and each of the conditions precedent set forth in Section 4 of the Loan Agreement remains satisfied.

518034.2 [July 24, 2017]

(f)     The Advance Note, the Second Advance Note, and the Loan Agreement are acknowledged, ratified, confirmed, and agreed by Borrower to be valid, subsisting, and binding obligations.  Borrower agrees that there is no right to set off or defense to payment of the Advance Note or the Second Advance Note.

(g)     This Request for Borrowing may be executed by Borrower in remote locations with signature page faxed or scanned and e-mailed to Lender.  Borrower agrees that the faxed or scanned signatures are binding upon Borrower.

Signed and delivered as of _____, 201___ .

INDEPENDENCE FUEL SYSTEMS LLC


By:_____
        R. Kevin Russell,
        Chief Executive Officer

518034.2 [July 24, 2017]

# EXHIBIT C

 **Origin Bank**

## LIQUIDITY COMPLIANCE CERTIFICATE

Pursuant to the Loan Agreement dated July 26, 2016, among INDEPENDENCE FUEL SYSTEMS LLC ("Borrower"), a Texas limited liability company, and ORIGIN BANK ("Lender"), a Louisiana state banking association, as now or hereafter amended, restated, replaced, supplemented, or otherwise modified, from time to time (collectively the "Loan Agreement"), Borrower and DON NEUMEYER ("Neumeyer") hereby represent and warrant to Lender that the information set forth below is true and correct as of the end of the fiscal quarter ending on _____, 201__ (the "Compliance Date") (capitalized terms herein have the meanings assigned in the Loan Agreement):

| | Liquidity Assets | Required | Actual |
|---|---|---|---|
| 1. | to be calculated each fiscal quarter | $2,000,000 | _____ |
| | Cash Equivalents | $_____ | |
| | Market Value of Securities | $_____ | |
| | Liquid Assets | $_____ | |

2.      Neumeyer hereby certifies that he is in compliance with the liquidity covenant set forth in Section 8 of the Loan Agreement as of the Compliance Date and that attached are true and correct copies of brokerage account statements, bank account statements, lists and values of all Securities and Cash Equivalents that evidence Neumeyer's compliance with the liquidity covenant.

3.      Borrower hereby certifies that (a) Borrower is in compliance with all covenants of the Loan Agreement, and (b) as of the Compliance Date, no Event of Default or event that would, with the lapse of time or giving of notice, or both, be an Event of Default, has occurred.  The Advance Note and the Loan Agreement are acknowledged, ratified, confirmed, and agreed by Borrower to be valid, subsisting, and binding obligations.  Borrower agrees that there is no right to set off or defense to payment of the Revolving Note.

Dated _____, 201__.

INDEPENDENCE FUEL SYSTEMS LLC

By:_____
     R. Kevin Russell,
     Chief Executive Officer

_____
     DON NEUMEYER