

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| INDEPENDENCE FUEL SYSTEMS, | § | Case No. 22-60301 |
| LLC,[1] | § | |
| | § | |
| DEBTOR. | § | |
| | § | |

## INTERIM ORDER AUTHORIZING THE DEBTOR'S USE OF
## CASH COLLATERAL AND PROVIDING FOR ADEQUATE PROTECTION

Came on for consideration the *Emergency Motion to Use Cash Collateral* [Docket No. 3] (the "Motion") filed by Independence Fuel Systems, LLC (the "Debtor") and the *Notice of Non-Consent to Use of Cash Collateral* [Docket No. 10] filed by Origin Bank ("Origin"). After considering the evidence presented or proffered at the hearing on the Motion and the statements and representations of the parties made on the record at the hearing on the Motion, and after due deliberation and consideration, the Court finds that the Motion is in the best interests of the Debtor, the Debtor's estate, and the Debtor's creditors and that good and sufficient cause exists for granting the relief set forth herein. Therefore, the Motion is **GRANTED** on an interim basis, as provided below. The Court further finds that:

A.    **Petition Date**. On July 14, 2022 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 sub-chapter V of title 11 of the United States Code, 11 U.S.C. § 101, *et seq.* (the "Bankruptcy Code"), commencing the above-styled bankruptcy case (the "Bankruptcy Case"). The Debtor continues to operate and manage its business as "debtor in possession" pursuant to section 1184 of the Bankruptcy Code.

---

[1] Independence Fuel Systems, LLC (the "Debtor"), Address: 381 Casa Linda Plaza, Dallas, TX 75218, EIN: XX-XXX5507.

B.      **Jurisdiction and Venue**.  This Court has jurisdiction over this Bankruptcy Case and the Motion pursuant to 28 U.S.C. §§ 157(b) and 1334.  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.  Consideration of the Motion constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2).

C.      **Committee Formation**.  No examiner or statutory committee has been appointed in the Bankruptcy Case pursuant to section 1102 of the Bankruptcy Code.

D.      **Trustee**.  Mark Weisbart has been appointed the Sub-Chapter V Trustee.

E.      **Business Operations**.   The Debtor operates ownership and operation of 6 compressed natural gas fuel stations.

F.      **Prepetition Facility Documents**.  As of the Petition Date, Origin asserts that the Debtor was indebted to Origin under a prepetition credit facility (the "Prepetition Facility").  The Debtor's obligations under the Prepetition Facility (the "Prepetition Facility Obligations") are evidenced by the following loan documents (collectively, the "Prepetition Facility Documents"):

1.      That certain Loan Agreement, by and between the Debtor and Origin, dated July 26, 2016;

2.      That certain First Amendment to Loan Agreement, by and between the Debtor and Origin, dated July 25, 2017;

3.      That certain Advance Promissory Note, executed by the Debtor in favor of Origin, dated July 26, 2016, in the original principal amount of $3,500,000.00;

4.      That certain Advance Promissory Note (Second Advance Note), executed by the Debtor in favor of Origin, dated July 25, 2017, in the original principal amount of $1,500,000.00;

5.      That certain Security Agreement executed by the Debtor in favor of Origin, dated effective  July 26, 2016;

6.      That certain Collateral Assignment of Royalty Agreements, executed by the Debtor in favor of Origin, dated defective July 26, 2016;

7.      That certain Collateral Assignment of Leases, executed by the Debtor in favor of Origin, dated defective July 26, 2016;

8.   That certain Restated Collateral Assignment of Royalty Agreements, executed by the Debtor in favor of Origin, dated defective July 25, 2017 (the "Royalty Assignment");

9.   That certain Restated Collateral Assignment of Leases, executed by the Debtor in favor of Origin, dated defective July 25, 2017 (the "Lease Assignment" with the Royalty Assignment, the "Assignments");

10.  That certain UCC-1 Financing Statement, filed on August 10, 2016 with the Texas Secretary of State under Filing Number 16-0026283583; and

11.  That certain UCC-1 Financing Statement, filed on September 30, 2021 with the Texas Secretary of State under Filing Number 21-0043072625.

G.   **Prepetition Facility Liens**. Subject to the Challenge periods detailed in paragraph 3 below, the Prepetition Facility is secured by various instruments, assignments, and certificates, including UCC-1 financing statements, which were (a) filed of record in appropriate jurisdictions; and (b) granted Origin first-priority senior liens and security interests (the "Prepetition Facility Liens") upon and in, among other things, all present and future accounts chattel paper (whether electronic or tangible), documents, instruments, deposit accounts, securities accounts, commodity accounts, general intangibles, payment intangibles; (including any right to payment for goods sold or services rendered arising out of the sale or delivery of personal property or work done or labor performed by the Debtor), software, letter of credit rights, investment property, intellectual property, health-care insurance receivables and other rights to payment of every kind,  including all securities, guaranties, warranties, indemnity agreements, insurance policies, and other agreements pertaining to same or the property described therein, now or hereafter owned, held, or acquired by the Debtor, and in any case where an account arises from the sale of goods, the interest of the Debtor in such good, all present and hereafter acquired inventory (including without limitations, all raw materials, work in process, and finished goods) held, possessed, owned, held on consignment, or held for sale, lease, return or to be furnished under contracts of services,  in whole or in part, by the Debtor wherever located, all equipment and fixtures of whatsoever kind

and character now or hereafter possessed, held, acquired, leased or owned by the Debtor and used

or usable in the Debtor's business, together with all replacements, accessories, additions,

substitutions, and accessions to all of the foregoing, as further described by the Prepetition Facility

Documents (the "Prepetition Facility Collateral").  By virtue of the Prepetition Facility Documents,

Origin asserts a lien on the Debtor's prepetition accounts, general intangibles, accounts receivable

and all proceeds thereof (collectively, the "Accounts"), which constitute cash collateral pursuant

to section 363(a) of the Bankruptcy Code. The Debtor's Accounts and the proceeds from the

Debtor's Accounts constitute cash collateral (the "Cash Collateral") pursuant to section 363(a) of

the Bankruptcy Code.

  H. **Debtor's Stipulations**.  Subject to the Challenge Period detailed in paragraph 3

below, in all respects, after reviewing its books and records and consulting with its attorneys, the

Debtor (on behalf of, and for itself and its estate) admits, stipulates, acknowledges, and agrees, to

the following (collectively, the "Debtor's Stipulations"):

1. as of the Petition Date, (a) the Prepetition Facility Obligations are legal, valid, binding, fully perfected, and non-avoidable obligations in the estimated aggregate liquidated amount of not less than $5,087,645.70, (b) the Prepetition Facility Obligations and the Prepetition Facility Liens constitute legal, valid, binding, fully perfected, and non-avoidable senior first-priority obligations of the Debtor, enforceable in accordance with the terms and conditions of the Prepetition Facility Documents, and (c) no portion of the Prepetition Facility Obligations or the Prepetition Facility Liens are subject to any offset, challenge, defense, claim, or counterclaim of any kind or any nature, nor is any portion of the Prepetition Facility Obligations or Prepetition Facility Liens subject to avoidance, recharacterization, disallowance, or subordination pursuant to the Bankruptcy Code or other applicable law; and

2. the Debtor and its estate shall be deemed to have (a) waived, discharged, and released Origin, together with Origin's shareholders, affiliates, parents, subsidiaries, controlling persons, directors, agents, officers, successors, assigns, directors, managers, principals, officers, employees, agents, investors, funds, advisors, attorneys, professionals, representatives, accountants, investment bankers, and consultants, each in its respective capacity as such (collectively, the "Released Parties"), of any and all claims (as defined in section 101(5) of the Bankruptcy Code), offsets, defenses, objections, challenges, causes of action,

and/or choses in action, or other claims arising under or pursuant to the Bankruptcy Code or under any other applicable law against any and all of the Released Parties, whether at law or in equity, arising under or relating to the Prepetition Facility Documents or the transactions contemplated thereunder, and (b) waived, discharged, and released any offsets, defenses, objections, challenges, causes of action, and/or choses in action with respect to the Prepetition Facility Obligations and Prepetition Facility Liens, including, without limitation, actions related to recharacterization, subordination, avoidance, any right or basis to challenge or object to the amount, validity, enforceability, and/or perfection of the Prepetition Facility Obligations and/or the Prepetition Facility Liens.

I.    **Cause Shown**.  Good cause has been shown for the entry of this Interim Order. The Debtor requires the use of Cash Collateral to operate its business.  Without the use of Cash Collateral, the Debtor will not be able to meet its cash requirement for working capital needs or to fund the administration of the Bankruptcy Case.  Origin does not consent to the use of any Cash Collateral, except on the terms and conditions, and for the purposes, each as specified herein.  The adequate protection provided herein and other benefits and privileges contained herein are consistent with and authorized by the Bankruptcy Code and are expected to provide adequate protection for Origin's interests in the Prepetition Facility Collateral under this Interim Order.

J.    **Notice**.  The Court finds that the notice to the U.S. Trustee, Origin, and the Debtor's creditors was sufficient under the circumstances.  Entry of this Interim Order is justified and appropriate under the circumstances and is in the best interest of the estate.  The use of Cash Collateral as provided herein is being authorized to avoid immediate and irreparable harm.

**IT IS THEREFORE ORDERED AND ADJUDGED** as follows:

1.    **Use of Cash Collateral**.  Unless ordered otherwise by the Court, the Debtor is hereby authorized to use Cash Collateral as set forth in the Budget attached hereto as Exhibit A. to the extent set forth herein. The Debtor shall solely make expenditures only for the purposes and up to the amounts set forth in the Budget, unless Origin consents in writing or the Court approves such additional expense(s) after notice and a hearing.  The Debtor shall not, without prior written

approval from Origin, make expenditures for any line item for an amount that exceeds 110% of the budgeted amount for any particular line item.  Any legal and professional fees set forth in the attached Budget remain subject to interim and final allowance by this Court and remain subject to all applicable provisions of the Bankruptcy Code and the Bankruptcy Local Rules, including, but not limited to Sections 327 and 330 of the Bankruptcy Code.

2.    **Partial Adequate Protection**.  As partial adequate protection and in the same priority and to the same extent and validity as existed prepetition, Origin is hereby granted: (a) automatic perfected replacement liens (the "Replacement Liens") on all property now owned or hereafter acquired by the Debtor (the "Collateral"); and (b) superpriority administrative claims (the "Superpriority Claims") pursuant to sections 361(2), 363(c)(2), 503(b)(1), 507(a)(2), and 507(b) of the Bankruptcy Code. The Replacement Liens granted herein shall not attach to any Chapter 5 causes of action under the Bankruptcy Code.   The Replacement Liens and the Superpriority Claims are granted solely to the extent that the Debtor's use of Cash Collateral results in a diminution in value of the Prepetition Facility Collateral securing the Prepetition Facility Obligations and shall constitute legal, valid, binding, fully perfected, and non-avoidable obligations of the Debtor, enforceable against the Debtor's estate and its respective successors and assigns, including, without limitation, any successor trustee or other estate representative in the Bankruptcy Case or any subsequent or superseding proceedings under chapter 7 or chapter 11 of the Bankruptcy Code (a "Subsequent Proceeding"), in accordance with the terms of this Interim Order.  No obligation, payment, transfer, or grant of a security interest under this Interim Order shall be avoidable or recoverable under the Bankruptcy Code or under any applicable law (including, without limitation, under section 502(d) of the Bankruptcy Code) or subject to any avoidance, reduction, setoff, offset, recharacterization, subordination (whether equitable,

contractual, or otherwise), counterclaims, cross-claims, defenses, or any other challenges under the Bankruptcy Code or any applicable law or regulation by any person or entity.

3.    **Challenge Periods**. Notwithstanding any other provisions of this Interim Order, all parties-in-interest to this Bankruptcy Case, including (a) the Debtor, any trustee, examiner, or other estate representative appointed in this Chapter 11 Bankruptcy Case, and (b) any trustee, examiner, or other estate representative appointed in a Subsequent Proceeding, shall have 60 days after the entry of this Interim Order (September 16, 2022) to commence an adversary proceeding against Origin to:

    a.   challenge the Debtor's Stipulations and all waivers or releases contained herein;

    b.   challenge the validity, extent, priority, perfection, enforceability, and non-avoidability of the Prepetition Facility Obligations, the Prepetition Facility Documents, and/or Prepetition Facility Liens;

    c.   seek to avoid or challenge (whether pursuant to Chapter 5 of the Bankruptcy Code or otherwise) any transfer made by or on behalf of the Debtor to or for the benefit of Origin prior to the Petition Date; or

    d.   seek damages or equitable relief against Origin arising from or related to its prepetition business and lending relationships with the Debtor (collectively, a "Challenge").

4.    **No Challenge After Expiration of Challenge Period.** All parties in interest, including (a) the Debtor, (b) any trustee, examiner, or other estate representative appointed in this Chapter 11 Bankruptcy Case, and (c) any trustee, examiner, or other estate representative appointed in a Subsequent Proceeding, that fail to act in accordance with the time periods set forth in the immediately preceding paragraph shall be, and hereby are, barred forever from commencing a Challenge or challenging in any manner the Prepetition Facility Obligation, Prepetition Facility

---

Documents, and the Prepetition Facility Liens and shall be bound by the waivers, Debtor's Stipulations, and terms set forth in this Interim Order.

5.     **Audits and Inspections**.  Upon an agreed date and time between the Debtor and Origin, the Debtor shall allow Origin, its agent, or any party authorized under the Prepetition Facility Documents to conduct and finalize an audit of the Prepetition Facility Collateral and Collateral (the "<u>Audit</u>") and conduct a physical inspection of each of the Debtor's facilities (the "<u>Inspections</u>") and Debtor shall reasonably cooperate with such Audit and Inspections.

6.     **Insurance**. As additional partial adequate protection for use of the Prepetition Facility Collateral and the Collateral, the Debtor shall maintain adequate insurance coverage on the Prepetition Facility Collateral and the Collateral, as may be required under the Prepetition Facility Documents, or any loan document, note, agreement, letter agreement, security agreement, guarantee, or other documents executed by the Debtor in favor of Origin.  The Debtor shall maintain or name Origin as mortgagee, lender loss payee, and/or additional insured under the insurance policies.  If not already provided, the Debtor shall promptly deliver to Origin proof that the Prepetition Facility Collateral and the Collateral are adequately insured against risk of loss and that Origin is named as mortgagee, lender, loss payee, and/or additional insured.

7.     **Taxes**. The Debtor shall remain current in all post-petition tax payment and reporting obligations.

8.     **No Lien Upon Avoidance Actions**.  The Replacement Liens do not extend to the Debtor's transfer or lien avoidance rights and claims under sections 544, 545, 547 or 548 of the Bankruptcy Code or funds received from the same.

9. **Perfection of Liens**. The Replacement Liens are, and shall be, valid, perfected, enforceable and effective as of the Petition Date without the need for any further action by the Debtor or Origin, or the necessity of execution or filing of any instruments or agreements.

10. **Proofs of Claim**. Origin shall not be required to file proofs of claim or requests for approval of administrative expenses, including Superpriority Claims or approval of attorneys' fees and costs, in this Bankruptcy Case or in any Subsequent Proceeding. The Debtor's Stipulations and the Debtor's acknowledgment of the Prepetition Facility Obligations and the liens, rights, claims, priorities and protections, including the Prepetition Facility Liens, granted to or in favor of Origin in respect of the Prepetition Facility Collateral and the Collateral, and against the Debtor, as set forth in this Interim Order and the Prepetition Facility Documents and under applicable law, shall be deemed timely filed proof(s) of claim against each of the Debtor on behalf of Origin in the Bankruptcy Case, which claims may be amended by Origin as necessary.

11. **Termination of Use of Cash Collateral**. The Debtor's right to use Cash Collateral shall expire and the Debtor shall immediately cease using the Cash Collateral upon the occurrence of a Termination Event (as defined below) that is not otherwise waived in writing by Origin.

12. **Termination Events**. The Debtor shall immediately cease using Cash Collateral after the Cure Period (as defined below) upon the occurrence of any of these events (each a "Termination Event"):

    a.    the Debtor violates any term of this Interim Order;

    b.    the Debtor fails to obtain final approval of the use of Cash Collateral on or before August 18, 2022, absent agreement of the parties or further order of the Court; or

    c.    the entry of an order:



    i)          converting the Debtor's Bankruptcy Case to a case under chapter 7 of the Bankruptcy Code;

    ii)        dismissing the Debtor's Bankruptcy Case;

    iii)      reversing, vacating, ~~or otherwise amending, supplementing, or modifying~~ this Interim Order; or

    iv)      terminating or modifying the automatic stay for any creditor other than Origin asserting a lien in the Collateral.

Provided however, upon the occurrence of any Termination Event, Origin shall notify the Debtor via e-mail at brad@absolutesign.net and cneuberger723@gmailcom and counsel for the Debtor at eric@ealpc.com of the Termination Event (the "Cure Email") and the Debtor shall have two business days from the time counsel for Origin transmitted the Cure Email (the "Cure Period") to cure such Termination Event. The Cure Period shall only be applicable to two (2) Termination Events. After transmission of two (2) Cure Emails, the Debtor shall immediately cease using Cash Collateral upon the occurrence of any Termination Event.

    **13.**    **Reservation of Rights**.  Origin shall not be limited or prohibited by this Interim Order or otherwise in seeking additional adequate protection for the use of Cash Collateral as provided herein.  Further, except as expressly stated herein, nothing in this Interim Order is intended to or shall modify any terms or rights of the Prepetition Facility Documents. Furthermore, Origin shall have the right, but not the obligation, to credit bid in any sale of the Debtor's assets, up to the full amount of Origin's secured claim.  Additionally, nothing in this Interim Order shall prevent Origin from filing a subsequent pleading in this Bankruptcy Case requesting (a) to discontinue the Debtor's use of Cash Collateral for any reason not discussed or contemplated in this Interim Order; and/or (b) relief from the automatic stay.

    **14.**    **Notice.**  Within two (2) business days after entry of this Interim Order, Debtor's counsel shall serve a copy of this Interim Order on the following parties: (a) the Office of the

United States Trustee; (b) Origin; (c) all creditors known to the Debtor who have or may assert liens against the Debtor's assets; (d) all parties-in-interest who have filed a notice of appearance; and; (e) the Sub-Chapter V Trustee.

15. **Origin's Cash Collateral**. Subject to the Challenge Provisions, Origin's Cash Collateral comprises all Accounts and all income, proceeds, products, rents, or profits of the Prepetition Facility Collateral and/or the Collateral that are now in the possession, custody, or control of the Debtor, or in which the Debtor will obtain an interest during the pendency of the case.

16. **No Payments on Prepetition Debts**. The Debtor is prohibited from paying any indebtedness or transferring property to vendors, contractors, customers, or other persons whose debt may have been incurred prior to the Petition Date, except upon separate order of the Court.

17. **Reporting Requirements**. Further, unless otherwise specified below, bi-weekly commencing on July 22, 2022, on or before Friday at 11:59 p.m. (prevailing Central Time), the Debtor shall provide Origin, by email, with the following items:

a. a copy of the current bank statement (including copies of all bank statements since the Petition Date) from each of the Debtor's bank account(s) (the "DIP Account(s)"), including copies of all checks, wires, and deposit documents;

b. a copy of the bank statement (including copies of all bank statements since the Petition Date) from each of the Debtor's bank account(s) from January 1, 2021 through the Petition Date, including copies of all checks, wires, and deposit documents;

c. sufficient information to identify the payee of each disbursement made by the Debtor from each of the DIP Account(s) since the Petition Date and updated weekly in the form of a vendor list of all payees, as well as the purpose for each disbursement (the "Vendor Transactions Report");

d. sufficient information to identify the amount and payee of each payroll disbursement from the DIP Account(s) since the Petition Date and updated weekly;

    e.      monthly accounts receivable and accounts payable lists and aging reports (including the names of account debtors and aging of accounts and general intangibles), with the accounts payable report bifurcated between prepetition and post-petition periods, on a bi-weekly basis, signed by an officer of the Debtor;

    f.      all books and records with regard to the royalty agreements and the lease agreements related to the Assignments, including but not limited to amounts due and owing by U.S. Venture, Inc. to the Debtor;

    g.      copies of the current Debtor's monthly balance sheet and income statement and copies of the Debtor's monthly balance sheets and income statements since January 1, 2022, provided, however, the Debtor shall not be required to produce such documents for the time period before the Petition Date, if such documents were not created in the ordinary course of the Debtor's business prior to the Petition Date;

    h.      upon entry of a final order approving the Debtor's use of Origin's cash collateral, a budget for the following four-week period detailing all of the Debtor's expected revenue, expenses, and disbursements (the "Budget");

    i.      copies of the Debtor's 2020 and 2021 tax returns, if such tax returns have been filed; and

    j.      weekly reconciliation of the Budget to the actual expenses to actual revenue, expenses, and disbursements. The Debtor shall not incur expenses nor use Cash Collateral in an amount that exceeds by more than 10% of the total expenses provided for the respective week in the Budget (the "Permitted Variance") without first obtaining Origin's written consent or Court approval.

In the event that any such reporting requirement is not received by Origin and is not cured within three (3) business day after emailed notice of the default, the Debtor's consents to an emergency hearing (three (3) business days' notice) regarding the Debtor's continuing ability to use Cash Collateral.

    **18.**    **Parties to Reporting**. All information that the Debtor is obligated to send to Origin under this Interim Order shall be sent by email to Origin's counsel Joseph Wielebinski at jwielebinski@winstead.com and Annmarie Chiarello at achiarello@winstead.com.

    **19.**    **Access to Information and Collateral**. The Debtor shall reasonably cooperate in providing Origin, and any professionals retained by Origin, with access, on at least three (3) days'

notice, during normal business hours, to: (a) the Prepetition Facility Collateral and/or the Collateral; (b) any and all books, records, documents, and information relevant to (i) the Debtor's financial condition, (ii) the Debtor's business operations, (iii) the Prepetition Facility Collateral, and (iv) the Collateral; and (c) any other information or reports regarding the Debtor that Origin may from time to time reasonably request.

20.    **Modification of Stay**. The automatic stay is hereby modified to the extent necessary to permit Origin:

    a.    to take all actions necessary to implement this Interim Order;

    b.    to retrieve, collect, and apply any payments and any proceeds with respect to the Collateral in accordance with this Interim Order; and

    c.    to apply, in accordance with the Prepetition Facility Documents, any funds or proceeds remitted by the Debtor.

22.    **Findings and Conclusions**. To the extent any findings of fact may constitute conclusions of law, and *vice versa*, they are hereby deemed as such.

23.    **Immediate Effect**. This Interim Order shall take effect immediately on execution hereof, notwithstanding the possible application of Bankruptcy Rules 4001(a)(3), 6004(g), 7062, or 9014.

24.    **Retention of Jurisdiction**. The Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Interim Order.

25.    <u>Final Hearing</u>.  In the absence of the filing of an agreement among the parties extending the interim authorization granted herein for an additional period of time, the Court will convene a final hearing on the Motion to consider the entry of a final order regarding cash collateral authorization on **August 10, 2022 at 9:30 a.m.** *in person* **in the Courtroom of the United States Bankruptcy Court for the Eastern District of Texas, Tyler Division, Plaza Tower, 110 N. College Ave., Ninth Floor, in Tyler, Texas.  <u>Any objections to the Motion or to Debtor's use of Cash Collateral shall be filed with the Court on or before August 1, 2022 (fourteen days from entry of this Order)</u>.**  All parties should review the directives regarding in person hearings  located on Judge Searcy's webpage, www.txeb.uscourts.gov/content/judgesearcy under the *Court Appearances and Hearing Methods* tab.  All parties are further ordered to review the directives regarding the health and safety of in person hearings located on Judge Searcy's webpage, www.txeb.uscourts.gov/content/judgesearcy under the *Health and Safety (Covid-19) Protocols* tab.

**THIS IS THE ONLY NOTICE THAT WILL BE PROVIDED FOR THIS HEARING.**

Agreed to by:

By: /s/ *Annmarie Chiarello*
Joseph J. Wielebinski– SBT #21432400
Annmarie Chiarello – SBT # 24097496
**WINSTEAD PC**
500 Winstead Building
2728 N. Harwood Street
Dallas, Texas 75201
(214) 745-5400 (Phone)
(214) 745-5390 (Facsimile)
e-mail: jwielebinski@winstead.com
e-mail: achiarello@winstead.com

**ATTORNEYS FOR ORIGIN BANK**

/s/ Eric Liepins
Eric Liepins SBT 12338110
ERIC A. LIEPINS, P.C.
12770 Coit Road, Suite 850
Dallas, Texas  75251
(972) 991-5591
(972) 991-5788 - fax
eric@ealpc.com

**ATTORNEYS FOR INDEPENDENCE FUEL SYSTEMS, LLC**

Signed on 07/18/2022

_____
THE HONORABLE JOSHUA P. SEARCY
UNITED STATES BANKRUPTCY JUDGE

**Exhibit "A"**
**Budget**

OPERATING BUDGET

| | |
|---|---|
| Natural Gas | 4,800 |
| Electricity | 1,800 |
| Station Communications | 100 |
| Rent Stations | 7,000 |
| Rent office | 1,500 |
| Contract Labor | 1,500 |
| Maintenance | 1,500 |
| Excise Taxes | 2,500 |
| payroll | 17,500 |
| Insurance | 5,000 |
| subchapter V | 1,000 |
| total | 42,700 |