IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| IN RE: | § |
| | § |
| **INDEPENDENCE FUEL SYSTEMS,** | § Case No. 22-60301 |
| **LLC,**[1] | § |
| | § |
| DEBTOR. | § |

**FINAL ORDER AUTHORIZING THE DEBTOR'S USE OF
CASH COLLATERAL AND PROVIDING FOR ADEQUATE PROTECTION**

Came on for consideration the *Emergency Motion to Use Cash Collateral* [Docket No. 3] (the "Motion") filed by Independence Fuel Systems, LLC (the "Debtor") and the *Notice of Non-Consent to Use of Cash Collateral* [Docket No. 10] filed by Origin Bank ("Origin"). After considering the evidence presented or proffered at the hearing on the Motion and the statements and representations of the parties made on the record at the hearing on the Motion, and after due deliberation and consideration, the Court finds that the Motion is in the best interests of the Debtor, the Debtor's estate, and the Debtor's creditors and that good and sufficient cause exists for granting the relief set forth herein. Therefore, the Motion is **GRANTED** on a final basis, as provided below. The Court further finds that:

A.  **Petition Date**.  On July 14, 2022 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 sub-chapter V of title 11 of the United States Code, 11 U.S.C. § 101, *et seq.* (the "Bankruptcy Code"), commencing the above-styled bankruptcy case (the "Bankruptcy Case"). The Debtor continues to operate and manage its business as "debtor in possession" pursuant to section 1184 of the Bankruptcy Code.

---

[1] Independence Fuel Systems, LLC (the "Debtor"), Address: 381 Casa Linda Plaza, Dallas, TX 75218, EIN: XX-XXX5507.

B.  **Jurisdiction and Venue**. This Court has jurisdiction over this Bankruptcy Case and the Motion pursuant to 28 U.S.C. §§ 157(b) and 1334. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. Consideration of the Motion constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2).

C.  **Interim Order.** On July 18, 2022, this Court held an interim hearing on the Motion. On July 19, 2022, this Court entered the *Interim Order Authorizing the Debtor's Use of Cash Collateral and Providing for Adequate Protection* [Docket No. 19](the "Interim Order"). The Interim Order set the Motion for final hearing on August 10, 2022. The Interim Order also set the deadline to object to the Motion as August 1, 2022. On August 10, 2022, this Court held the final hearing on the Motion to consider entry of this Final Order.

D.  **Committee Formation**. No examiner or statutory committee has been appointed in the Bankruptcy Case pursuant to section 1102 of the Bankruptcy Code.

E.  **Trustee**. Mark Weisbart has been appointed the Sub-Chapter V Trustee. *See* Docket No. 13.

F.  **Business Operations**. The Debtor operates ownership and operation of six (6) compressed natural gas fuel stations.

G.  **Prepetition Facility Documents**. As of the Petition Date, Origin asserts that the Debtor was indebted to Origin under a prepetition credit facility (the "Prepetition Facility"). The Debtor's obligations under the Prepetition Facility (the "Prepetition Facility Obligations") are evidenced by the following loan documents (collectively, the "Prepetition Facility Documents"):

1.  That certain Loan Agreement, by and between the Debtor and Origin, dated July 26, 2016;

2.  That certain First Amendment to Loan Agreement, by and between the Debtor and Origin, dated July 25, 2017;

3. That certain Advance Promissory Note, executed by the Debtor in favor of Origin, dated July 26, 2016, in the original principal amount of $3,500,000.00;

4. That certain Advance Promissory Note (Second Advance Note), executed by the Debtor in favor of Origin, dated July 25, 2017, in the original principal amount of $1,500,000.00;

5. That certain Security Agreement executed by the Debtor in favor of Origin, dated effective July 26, 2016;

6. That certain Collateral Assignment of Royalty Agreements, executed by the Debtor in favor of Origin, dated defective July 26, 2016;

7. That certain Collateral Assignment of Leases, executed by the Debtor in favor of Origin, dated defective July 26, 2016;

8. That certain Restated Collateral Assignment of Royalty Agreements, executed by the Debtor in favor of Origin, dated defective July 25, 2017 (the "Royalty Assignment");

9. That certain Restated Collateral Assignment of Leases, executed by the Debtor in favor of Origin, dated defective July 25, 2017 (the "Lease Assignment" with the Royalty Assignment, the "Assignments");

10. That certain UCC-1 Financing Statement, filed on August 10, 2016 with the Texas Secretary of State under Filing Number 16-0026283583; and

11. That certain UCC-1 Financing Statement, filed on September 30, 2021 with the Texas Secretary of State under Filing Number 21-0043072625.

H. **Prepetition Facility Liens**. Subject to the Challenge Periods detailed in paragraph 3 below, the Prepetition Facility is secured by various instruments, assignments, and certificates, including UCC-1 financing statements, which were (a) filed of record in appropriate jurisdictions; and (b) granted Origin first-priority senior liens and security interests (the "Prepetition Facility Liens") upon and in, among other things, all present and future accounts, chattel paper (whether electronic or tangible), documents, instruments, deposit accounts, securities accounts, commodity accounts, general intangibles, payment intangibles; (including any right to payment for goods sold or services rendered arising out of the sale or delivery of personal property or work done or labor performed by the Debtor), software, letter of credit

rights, investment property, intellectual property, health-care insurance receivables and other rights to payment of every kind, including all securities, guaranties, warranties, indemnity agreements, insurance policies, and other agreements pertaining to same or the property described therein, now or hereafter owned, held, or acquired by the Debtor, and in any case where an account arises from the sale of goods, the interest of the Debtor in such good, all present and hereafter acquired inventory (including without limitations, all raw materials, work in process, and finished goods) held, possessed, owned, held on consignment, or held for sale, lease, return or to be furnished under contracts of services, in whole or in part, by the Debtor wherever located, all equipment and fixtures of whatsoever kind and character now or hereafter possessed, held, acquired, leased or owned by the Debtor and used or usable in the Debtor's business, together with all replacements, accessories, additions, substitutions, and accessions to all of the foregoing, as further described by the Prepetition Facility Documents (the "Prepetition Facility Collateral"). By virtue of the Prepetition Facility Documents, Origin asserts a lien on the Debtor's prepetition accounts, general intangibles, accounts receivable and all proceeds thereof (collectively, the "Accounts"), which constitute cash collateral pursuant to section 363(a) of the Bankruptcy Code. The Debtor's Accounts and the proceeds from the Debtor's Accounts constitute cash collateral (the "Cash Collateral") pursuant to section 363(a) of the Bankruptcy Code.

I.  **Debtor's Stipulations**. Subject to the Challenge Period detailed in paragraph 3 below, in all respects, after reviewing its books and records and consulting with its attorneys, the Debtor (on behalf of, and for itself and its estate) admits, stipulates, acknowledges, and agrees, to the following (collectively, the "Debtor's Stipulations"):

1. as of the Petition Date, (a) the Prepetition Facility Obligations are legal, valid, binding, fully perfected, and non-avoidable obligations in the estimated aggregate

liquidated amount of not less than $5,087,645.70, (b) the Prepetition Facility Obligations and the Prepetition Facility Liens constitute legal, valid, binding, fully perfected, and non-avoidable senior first-priority obligations of the Debtor, enforceable in accordance with the terms and conditions of the Prepetition Facility Documents, and (c) no portion of the Prepetition Facility Obligations or the Prepetition Facility Liens are subject to any offset, challenge, defense, claim, or counterclaim of any kind or any nature, nor is any portion of the Prepetition Facility Obligations or Prepetition Facility Liens subject to avoidance, recharacterization, disallowance, or subordination pursuant to the Bankruptcy Code or other applicable law; and

2. the Debtor and its estate shall be deemed to have (a) waived, discharged, and released Origin, together with Origin's shareholders, affiliates, parents, subsidiaries, controlling persons, directors, agents, officers, successors, assigns, directors, managers, principals, officers, employees, agents, investors, funds, advisors, attorneys, professionals, representatives, accountants, investment bankers, and consultants, each in its respective capacity as such (collectively, the "Released Parties"), of any and all claims (as defined in section 101(5) of the Bankruptcy Code), offsets, defenses, objections, challenges, causes of action, and/or choses in action, or other claims arising under or pursuant to the Bankruptcy Code or under any other applicable law against any and all of the Released Parties, whether at law or in equity, arising under or relating to the Prepetition Facility Documents or the transactions contemplated thereunder, and (b) waived, discharged, and released any offsets, defenses, objections, challenges, causes of action, and/or choses in action with respect to the Prepetition Facility Obligations and Prepetition Facility Liens, including, without limitation, actions related to recharacterization, subordination, avoidance, any right or basis to challenge or object to the amount, validity, enforceability, and/or perfection of the Prepetition Facility Obligations and/or the Prepetition Facility Liens.

J.  **Cause Shown**.  Good cause has been shown for the entry of this Final Order. The Debtor requires the use of Cash Collateral to operate its business. Without the use of Cash Collateral, the Debtor will not be able to meet its cash requirement for working capital needs or to fund the administration of the Bankruptcy Case. Origin does not consent to the use of any Cash Collateral, except on the terms and conditions, and for the purposes, each as specified herein. The adequate protection provided herein and other benefits and privileges contained herein are consistent with and authorized by the Bankruptcy Code and are expected to provide adequate protection for Origin's interests in the Prepetition Facility Collateral under this Final Order. The terms and conditions set forth in this Final Order are fair, just and reasonable under

the circumstances and reflect the Debtor's exercise of its prudent business judgment consistent with its fiduciary duties.

K.     **Notice**.  The Court finds that the notice to the U.S. Trustee, Origin, and the Debtor's creditors was sufficient under the circumstances.  Entry of this Final Order is justified and appropriate under the circumstances and is in the best interest of the estate.

**IT IS THEREFORE ORDERED AND ADJUDGED** as follows:

1.     **Motion Granted**.  The Motion is hereby granted on a final basis on the terms set forth in this Final Order.  Any objections to the entry of this Final Order that have not been previously resolved or withdrawn, including any reservations of rights therein, are hereby overruled on their merits.

2.     **Use of Cash Collateral**.  Unless ordered otherwise by the Court, the Debtor is hereby authorized to use Cash Collateral as set forth in the Budget (defined herein) attached hereto as Exhibit A, to the extent set forth herein.  The Debtor shall solely make expenditures only for the purposes and up to the amounts set forth in the Budget, unless Origin consents in writing or the Court approves such additional expense(s) after notice and a hearing.  The Debtor shall not, without prior written approval from Origin, make expenditures for any line item for an amount that exceeds 110% of the budgeted amount for any particular line item.  Any legal and professional fees set forth in the attached Budget remain subject to interim and final allowance by this Court and remain subject to all applicable provisions of the Bankruptcy Code and the Bankruptcy Local Rules, including, but not limited to Sections 327 and 330 of the Bankruptcy Code.

3.     **Partial Adequate Protection**.  As partial adequate protection and in the same priority and to the same extent and validity as existed prepetition, Origin is hereby granted:

(a) automatic perfected replacement liens (the "Replacement Liens") on all property now owned or hereafter acquired by the Debtor (the "Collateral"); and (b) superpriority administrative claims (the "Superpriority Claims") pursuant to sections 361(2), 363(c)(2), 503(b)(1), 507(a)(2), and 507(b) of the Bankruptcy Code. The Replacement Liens granted herein shall not attach to any Chapter 5 causes of action under the Bankruptcy Code. The Replacement Liens and the Superpriority Claims are granted solely to the extent that the Debtor's use of Cash Collateral results in a diminution in value of the Prepetition Facility Collateral securing the Prepetition Facility Obligations and shall constitute legal, valid, binding, fully perfected, and non-avoidable obligations of the Debtor, enforceable against the Debtor's estate and its respective successors and assigns, including, without limitation, any successor trustee or other estate representative in the Bankruptcy Case or any subsequent or superseding proceedings under chapter 7 or chapter 11 of the Bankruptcy Code (a "Subsequent Proceeding"), in accordance with the terms of this Final Order. No obligation, payment, transfer, or grant of a security interest under this Final Order shall be avoidable or recoverable under the Bankruptcy Code or under any applicable law (including, without limitation, under section 502(d) of the Bankruptcy Code) or subject to any avoidance, reduction, setoff, offset, recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaims, cross-claims, defenses, or any other challenges under the Bankruptcy Code or any applicable law or regulation by any person or entity.

4. **Challenge Periods**. Notwithstanding any other provisions of this Final Order, all parties-in-interest to this Bankruptcy Case, including (a) the Debtor, any trustee, examiner, or other estate representative appointed in this Chapter 11 Bankruptcy Case, and (b) any trustee, examiner, or other estate representative appointed in a Subsequent Proceeding, shall have until September 16, 2022 to commence an adversary proceeding against Origin to:

   a. challenge the Debtor's Stipulations and all waivers or releases contained herein;

   b. challenge the validity, extent, priority, perfection, enforceability, and non-avoidability of the Prepetition Facility Obligations, the Prepetition Facility Documents, and/or Prepetition Facility Liens;

   c. seek to avoid or challenge (whether pursuant to Chapter 5 of the Bankruptcy Code or otherwise) any transfer made by or on behalf of the Debtor to or for the benefit of Origin prior to the Petition Date; or

   d. seek damages or equitable relief against Origin arising from or related to its prepetition business and lending relationships with the Debtor (collectively, a "Challenge").

   5.   **No Challenge After Expiration of Challenge Period.** All parties in interest, including (a) the Debtor, (b) any trustee, examiner, or other estate representative appointed in this Chapter 11 Bankruptcy Case, and (c) any trustee, examiner, or other estate representative appointed in a Subsequent Proceeding, that fail to act in accordance with the time periods set forth in the immediately preceding paragraph shall be, and hereby are, barred forever from commencing a Challenge or challenging in any manner the Prepetition Facility Obligation, Prepetition Facility Documents, and the Prepetition Facility Liens and shall be bound by the waivers, Debtor's Stipulations, and all other terms set forth in this Final Order.

   6.   For the avoidance of doubt, no Collateral or Cash Collateral, or the proceeds thereof, shall be used by any party for the purpose of: (a) objecting to or contesting in any manner, or in raising any defenses to, the validity, extent, perfection, priority, or enforceability of any claim held or asserted by Origin against the Debtor, or any liens or security interests with respect thereto; (b) preventing, hindering, or delaying Origin's enforcement of remedies and

collection rights against and upon any of Origin's Collateral or the Prepetition Facility Collateral, except for motions to lift the stay not predicated upon a Termination Event (defined herein); or, (c) modifying Origin's rights under the applicable Prepetition Facility Documents with the Debtor, absent the written consent of Origin.

7. **Adequate Protection Payments**. As additional partial adequate protection for use of the Prepetition Facility Collateral and the Collateral, the Debtor shall make monthly payments to Origin of $10,000.00 (the "Payment"). The first Payment shall be due and payable on or before August 20, 2022, and each subsequent Payment shall be due and payable on the 20th (twentieth) day of every month thereafter (i.e., the second payment shall be due and payable by September 20, 2022 and the third payment shall be due and payable by October 20, 2022).

8. **Audits and Inspections**. Upon an agreed date and time between the Debtor and Origin, the Debtor shall allow Origin, its agent, or any party authorized under the Prepetition Facility Documents to conduct and finalize an audit of the Prepetition Facility Collateral and Collateral (the "Audit") and conduct a physical inspection of each of the Debtor's facilities (the "Inspections") and Debtor shall reasonably cooperate with such Audit and Inspections.

9. **Insurance**. As additional partial adequate protection for use of the Prepetition Facility Collateral and the Collateral, the Debtor shall maintain adequate insurance coverage on the Prepetition Facility Collateral and the Collateral, as may be required under the Prepetition Facility Documents, or any loan document, note, agreement, letter agreement, security agreement, guarantee, or other documents executed by the Debtor in favor of Origin. The Debtor shall maintain or name Origin as mortgagee, lender loss payee, and/or additional insured under the insurance policies. If not already provided, the Debtor shall promptly deliver to Origin proof

that the Prepetition Facility Collateral and the Collateral are adequately insured against risk of loss and that Origin is named as mortgagee, lender, loss payee, and/or additional insured.

10. **Taxes**. The Debtor shall remain current in all post-petition tax payment and reporting obligations.

11. **No Lien Upon Avoidance Actions**. The Replacement Liens do not extend to the Debtor's transfer or lien avoidance rights and claims under sections 544, 545, 547 or 548 of the Bankruptcy Code or funds received from the same.

12. **Perfection of Liens**. The Replacement Liens are, and shall be, valid, perfected, enforceable and effective as of the Petition Date without the need for any further action by the Debtor or Origin, or the necessity of execution or filing of any instruments or agreements.

13. **Proofs of Claim**. Origin shall not be required to file proofs of claim or requests for approval of administrative expenses, including Superpriority Claims or approval of attorneys' fees and costs, in this Bankruptcy Case or in any Subsequent Proceeding. The Debtor's Stipulations and the Debtor's acknowledgment of the Prepetition Facility Obligations and the liens, rights, claims, priorities and protections, including the Prepetition Facility Liens, granted to or in favor of Origin in respect of the Prepetition Facility Collateral and the Collateral, and against the Debtor, as set forth in this Final Order and the Prepetition Facility Documents and under applicable law, shall be deemed timely filed proof(s) of claim against each of the Debtor on behalf of Origin in the Bankruptcy Case, which claims may be amended by Origin as necessary.



14. **Termination of Use of Cash Collateral**. The Debtor's right to use Cash Collateral shall expire and the Debtor shall immediately cease using the Cash Collateral upon the

occurrence of a Termination Event (as defined below) that is not otherwise waived in writing by Origin.

15. **Termination Events**. The Debtor shall immediately cease using Cash Collateral after the Cure Period (as defined below) upon the occurrence of any of these events (each a "Termination Event"):

    a.    there is an Event of Default (as defined by the Prepetition Facility Documents) under the Prepetition Facility Documents, provided, however, that non-payment under the Prepetition Facility Documents, any default related to the insolvency or financial condition of the Debtor, or the commencement of a case under the Bankruptcy Code shall not constitute a Termination Event;

    b.    the Debtor violates any term of this Final Order;

    c.    the entry of an order:

        i)    converting the Debtor's Bankruptcy Case to a case under chapter 7 of the Bankruptcy Code;

        ii)    dismissing the Debtor's Bankruptcy Case;

        iii)    reversing, vacating, ~~or otherwise amending, supplementing, or modifying~~ this Final Order; *[initialed]*

        iv)    terminating or modifying the automatic stay for any creditor other than Origin asserting a lien in the Collateral; or

        v)    invalidating, subordinating, or otherwise sustaining any challenge to the Pre-Petition Facility Liens, the Replacement Liens, or the Superpriority Claims granted to Origin hereunder.

Provided however, upon the occurrence of any Termination Event, Origin shall notify the Debtor via e-mail at brad@absolutesign.net and cneuberger723@gmail.com and counsel for the Debtor at eric@ealpc.com of the Termination Event (the "Cure Email") and the Debtor shall have two business days from the time counsel for Origin transmitted the Cure Email (the "Cure Period") to cure such Termination Event. The Cure Period shall only be applicable to two (2) Termination

Events. After transmission of two (2) Cure Emails, the Debtor shall immediately cease using Cash Collateral upon the occurrence of any Termination Event.

16. **Term**. Unless extended by written agreement of the Debtor and Origin the term of this Final Order and the authorization of the use of Cash Collateral shall cease, on the earliest to occur of the following (the "Maturity Date"): (a) November 11, 2022 unless extended by Origin (the "Termination Date"); (b) the occurrence of an uncured Termination Event under this Final Order; (c) the sale of all or substantially all assets of the Debtor; and (d) confirmation of a Chapter 11 plan in this Case.

17. **Reservation of Rights**. Origin shall not be limited or prohibited by this Final Order or otherwise in seeking additional adequate protection for the use of Cash Collateral as provided herein. Further, except as expressly stated herein, nothing in this Final Order is intended to or shall modify any terms or rights of the Prepetition Facility Documents. Furthermore, Origin shall have the right, but not the obligation, to credit bid in any sale of the Debtor's assets, up to the full amount of Origin's secured claim. Additionally, nothing in this Final Order shall prevent Origin from filing a subsequent pleading in this Bankruptcy Case requesting (a) to discontinue the Debtor's use of Cash Collateral for any reason not discussed or contemplated in this Final Order; and/or (b) relief from the automatic stay.

18. **Notice.** Within two (2) business days after entry of this Final Order, Debtor's counsel shall serve a copy of this Final Order on the following parties: (a) the Office of the United States Trustee; (b) Origin; (c) all creditors known to the Debtor who have or may assert liens against the Debtor's assets; (d) all parties-in-interest who have filed a notice of appearance; and; (e) the Sub-Chapter V Trustee.

19. **Origin's Cash Collateral**. Subject to the Challenge Provisions, Origin's Cash Collateral comprises all Accounts and all income, proceeds, products, rents, or profits of the Prepetition Facility Collateral and/or the Collateral that are now in the possession, custody, or control of the Debtor, or in which the Debtor will obtain an interest during the pendency of the case.

20. **No Payments on Prepetition Debts**. The Debtor is prohibited from paying any indebtedness or transferring property to vendors, contractors, customers, or other persons whose debt may have been incurred prior to the Petition Date, except upon separate order of the Court.

21. **Reporting Requirements**. Further, unless otherwise specified below, bi-weekly commencing on July 22, 2022, on or before Friday at 11:59 p.m. (prevailing Central Time), the Debtor shall provide Origin, by email, with the following items:

   a. a copy of the current bank statement (including copies of all bank statements since the Petition Date) from each of the Debtor's bank account(s) (the "DIP Account(s)"), including copies of all checks, wires, and deposit documents;

   b. a copy of the bank statement (including copies of all bank statements since the Petition Date) from each of the Debtor's bank account(s) from January 1, 2021 through the Petition Date, including copies of all checks, wires, and deposit documents;

   c. sufficient information to identify the payee of each disbursement made by the Debtor from each of the DIP Account(s) since the Petition Date and updated weekly in the form of a vendor list of all payees, as well as the purpose for each disbursement (the "Vendor Transactions Report");

   d. sufficient information to identify the amount and payee of each payroll disbursement from the DIP Account(s) since the Petition Date and updated weekly;

   e. monthly accounts receivable and accounts payable lists and aging reports (including the names of account debtors and aging of accounts and general intangibles), with the accounts payable report bifurcated between prepetition and post-petition periods, on a bi-weekly basis, signed by an officer of the Debtor;

  f. all books and records with regard to the royalty agreements and the lease agreements related to the Assignments, including but not limited to amounts due and owing by U.S. Venture, Inc. to the Debtor;

  g. copies of the current Debtor's monthly balance sheet and income statement and copies of the Debtor's monthly balance sheets and income statements since January 1, 2022, provided, however, the Debtor shall not be required to produce such documents for the time period before the Petition Date, if such documents were not created in the ordinary course of the Debtor's business prior to the Petition Date;

  h. upon entry of a final order approving the Debtor's use of Origin's cash collateral, a budget for the following four-week period detailing all of the Debtor's expected revenue, expenses, and disbursements (the "Budget");

  i. copies of the Debtor's 2020 and 2021 tax returns, if such tax returns have been filed; and

  j. weekly reconciliation of the Budget to the actual expenses to actual revenue, expenses, and disbursements. The Debtor shall not incur expenses nor use Cash Collateral in an amount that exceeds by more than 10% of the total expenses provided for the respective week in the Budget (the "Permitted Variance") without first obtaining Origin's written consent or Court approval.

In the event that any such reporting requirement is not received by Origin and is not cured within three (3) business day after emailed notice of the default, the Debtor's consents to an emergency hearing (three (3) business days' notice) regarding the Debtor's continuing ability to use Cash Collateral.

  **22.** **Parties to Reporting**. All information that the Debtor is obligated to send to Origin under this Final Order shall be sent by email to Origin's counsel Joseph Wielebinski at jwielebinski@winstead.com and Annmarie Chiarello at achiarello@winstead.com.

  **23.** **Ad Valorem Property Tax Lien**. Nothing in this order or any prior order grants or acknowledges liens that prime ad valorem property tax liens.

  **24.** **Access to Information and Collateral**. The Debtor shall reasonably cooperate in providing Origin, and any professionals retained by Origin, with access, on at least three (3)

days' notice, during normal business hours, to: (a) the Prepetition Facility Collateral and/or the Collateral; (b) any and all books, records, documents, and information relevant to (i) the Debtor's financial condition, (ii) the Debtor's business operations, (iii) the Prepetition Facility Collateral, and (iv) the Collateral; and (c) any other information or reports regarding the Debtor that Origin may from time to time reasonably request.

25. **Modification of Stay**. The automatic stay is hereby modified to the extent necessary to permit Origin:

a. to take all actions necessary to implement this Final Order;

b. to retrieve, collect, and apply any payments and any proceeds with respect to the Collateral in accordance with this Final Order; and

c. to apply, in accordance with the Prepetition Facility Documents, any funds or proceeds remitted by the Debtor.

25. **Findings and Conclusions**. To the extent any findings of fact may constitute conclusions of law, and *vice versa*, they are hereby deemed as such.

26. **Immediate Effect**. This Final Order shall take effect immediately on execution hereof, notwithstanding the possible application of Bankruptcy Rules 4001(a)(3), 6004(g), 7062, or 9014.

27. **Retention of Jurisdiction**. The Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Final Order.

### ### END OF ORDER ###

Agreed to by:

By: /s/ *Annmarie Chiarello*
Joseph J. Wielebinski– SBT #21432400

Signed on 08/12/2022

_____
THE HONORABLE JOSHUA P. SEARCY
UNITED STATES BANKRUPTCY JUDGE

Annmarie Chiarello – SBT # 24097496
**WINSTEAD PC**
500 Winstead Building
2728 N. Harwood Street
Dallas, Texas 75201
(214) 745-5400 (Phone)
(214) 745-5390 (Facsimile)
e-mail: jwielebinski@winstead.com
e-mail: achiarello@winstead.com

**ATTORNEYS FOR ORIGIN BANK**

*/s/ DRAFT*
Eric Liepins SBT 12338110
ERIC A. LIEPINS, P.C.
12770 Coit Road, Suite 1100
Dallas, Texas 75251
(972) 991-5591
(972) 991-5788 - fax
eric@ealpc.com

**ATTORNEYS FOR INDEPENDENCE FUEL SYSTEMS, LLC**

**Exhibit "A"**
**Budget**

0-30 Day　　　　　　　　　　　　　　　　　　　　　　　　　　IFS Budget

## Monthly Operating Budget, IFS Post-Petition (July 14)

### COG: fluctuate month to month based on sales

| Name | Cost |
|---|---|
| Natural Gas | $ 70,000.00 |
| Stations Rent | $ 9,000.00 |
| Station Royaltys | $ 4,650.00 |
| Electricity | $ 19,000.00 |
| Heartland 3rd Party Credit Card Processor | $ 360.00 |
| Station Communication | $ 1,000.00 |
| Rebate to Green Path from Centerville Contract | $ 3,000.00 |
| State and Fed Excise Tax | $ 2,500.00 |
| **Total COG** | **$ 109,510.00** |

### Operating Expense:

| Name | Cost |
|---|---|
| warehouse rent | $ 330.00 |
| warehouse water | $ 220.00 |
| warehouse electricity | $ 190.00 |
| STWS sanitation | $ 332.5 |
| Southern Sanitation | $ 120.0 |
| Certafied Landscape | $ 273.0 |
| Coltarus Halo (Quick Books system migration) | $ 811.0 |
| City of Centerville water/trash | $ 223.0 |
| Office rental | $ 50.0 |
| Insurance policies | $ 1,000.0 |
| Salaries | $ 24,000.0 |
| Employer Portion of Payroll taxes | $ 1,836.7 |
| Contract Labor | $ 2,000.0 |
| Litigator | ? |
| Bankruptcy Attorney | ? |
| TX Workforce | $ 1,680.0 |
| Sub-Chapter 5 Trustee | $ 2,000.0 |
| Site Maintenance | $ 1,500.0 |
| **Total Operating Costs** | **$ 43,249.3** |

| | |
|---|---|
| **Total Operating Expenses/Month** | **$ 152,759.3** |

### Income - Sale of CNG

| Name | Cost |
|---|---|
| US Ventures - Gain Marketing | $ 149,000.00 |
| City of Longview | $ 11,250.00 |