1                IN THE UNITED STATES BANKRUPTCY COURT
                FOR THE EASTERN DISTRICT OF TEXAS
2                        TYLER DIVISION

3

4    IN RE:                )    BK. NO:  22-60301-JPS

5                          )

6    INDEPENDENCE FUEL      )

7    SYSTEMS, LLC           )

8        D E B T O R.       )

9

10

11              *  *  *  *  *  *  *  *  *  *

12                TRANSCRIPT OF PROCEEDINGS

13              *  *  *  *  *  *  *  *  *  *

14

15

16

17

18

19

20       BE IT REMEMBERED, that on the 12th day of December,

21    2022, before the HONORABLE JOSHUA P. SEARCY, United States

22    Bankruptcy Judge at Tyler, Texas, the above styled and

23    numbered cause came on for hearing, and the following

24    constitutes the transcript of such proceedings as hereinafter

25    set forth:


                CINDY SUMNER, CSR (214) 802-7196

1          P R O C E E D I N G S

2          COURTROOM DEPUTY:  Independence Fuel Systems,

3   LLC.  22-60301, Chapter 11, Subchapter V.   Item 83, objection

4   to claim 10 of Eastman Midstream filed by the debtor.   Item

5   67, application to employ Valdez Washington, LLP as special

6   counsel for debtor.  Confirmation regarding Chapter 11 small

7   business Subchapter V plan.

8          THE COURT:  All right.  Good morning.  You'll

9   have to give me a minute, my computer is not cooperating for

10  some reason.

11      All right.  I'm going to take a minute while he gets

12  the computer to work.  I apologize.  I will be right back.

13                (Brief recess ensued.)

14          THE COURT:  All right.  Thank you for your

15  patience again.

16      We're here this morning on our Independence Fuel

17  Systems, 22-60301, various matters.

18      Mr. Liepins, why don't you tell me where we are.  I

19  know you all wanted to deal with the claim objection first,

20  right?

21          MR. LIEPINS:  Your Honor, Eric Liepins for the

22  debtor.

23      Yes, Your Honor.  I think we were discussing --

24  Ms. Hamm and I discussed it ahead of time.  It makes sense to

25  deal with the claims objection because that will flow into

CINDY SUMNER, CSR (214) 802-7196

1  potential cure amount, which will flow into the debtor's

2  ability to assume, which will flow into the feasibility of

3  confirmation.  So it makes sense that we take that issue up

4  first, Your Honor.

5           THE COURT:  All right.  Do we anticipate --

6  and I promise I'll take appearances.  But do we anticipate

7  the application to employ also being contested?

8           MR. LIEPINS:  No, Your Honor.  I don't think

9  the application to employ is going to be heard until after

10  you do these other things.  And if we get to confirmation, we

11  won't have the application to employ.

12           THE COURT:  Okay.  All right.  That's what I

13  figured, but I thought I would ask.

14      Then why don't we go ahead and take appearances

15  starting with you.

16           MR. LIEPINS:  Again, Your Honor, Eric Liepins

17  here for the debtor, along with PJ Putnam for the debtor.

18           MS. HAMM:  Hello, Your Honor.  Holly Hamm for

19  Eastman Midstream, LP.

20           MS. CHIARELLO:  Good morning, Your Honor.

21  Annmarie Chiarello of Winstead PC here on behalf of Origin

22  Bank.

23           MR. WEISBART:  Good morning, Your Honor.  Mark

24  Weisbart the Subchapter V Trustee.  Primarily here for the

25  confirmation hearing, but here to assist as needed.


                CINDY SUMNER, CSR (214) 802-7196

1              THE COURT:  All right.  Thank you.

2       Any other attorneys in the courtroom making an

3  appearance?

4       All right.  Let's do next on the telephone.  Are there

5  any telephonic appearances?  Anyone who would like to make an

6  appearance over the telephone?

7       All right.  Ms. Wall, why don't you go ahead and make

8  your appearance.

9              MS. WALL:  Thank you, Your Honor.  This is

10 Emily Wall on behalf of Eastern Fuel and Eastern Fuel

11 Property.

12             THE COURT:  All right.  Thank you very much.

13      I would also -- since Ms. Wall is making a virtual

14 appearance, if you all in the courtroom please take pains to

15 speak into the microphone, otherwise she won't hear what's

16 going on.

17      Okay.  Well, then, Ms. Hamm, I believe it's your

18 objection, so why don't you start us off.

19             MS. HAMM:  Good morning.  So Eastman Midstream

20 is the owner of the pipelines that deliver the compressed gas

21 to the debtor's CNG Stations.  Eastman and IFS have a gas

22 sales contract covering the stations.  And without the

23 delivery of that gas, IFS basically has no business.

24      So it makes sense in its plan.  They indicated that

25 they intend to assume the executory gas sales contract.  As I

1    read that, I thought that was encouraging.  But I kept

2    reading and there was no provision for any cure of the gas

3    sales amounts due.  There are pre-petition invoices that

4    remain unpaid.  And although the plan says all of the

5    post-petition invoices or, you know, everything's up to date,

6    there are still some post-petition amounts that remain

7    unpaid.  I talked to their counsel and it was indicated that

8    there was no intent -- intent to cure the amount due.  And

9    although required under 365(b)(1), if it's not cured under

10    365(b)(1), then the plan is not confirmable, in our opinion.

11        After we filed an objection to the plan on that basis,

12    IFS filed an objection to Eastman's proof of claim.  And

13    there's no -- in the objection there's really just -- it's

14    not clear, it's vague what their objection to the proof of

15    claim is.  They've said that they've done an audit and

16    determined that the debtor's been overcharged.  But we don't

17    know how or why.  And then we looked at the exhibits and we

18    still don't know.  My client has asked for information about

19    this and received very little.

20        They have -- Eastman has reviewed its records and

21    reconciled the invoices and payments on one of its stations

22    and still doesn't understand the allegations about

23    overpayment.  There does appear to be a little bad -- bit of

24    bad blood between the parties.  There is a dispute by my

25    client to many of the alleged facts in the plan.  But we are


CINDY SUMNER, CSR (214) 802-7196

1    working to keep the issues focused on the proof of claim and

2    the cure amount and not muddying the arguments with other

3    irrelevant information.  So Eastman has pre- and

4    post-petition invoices unpaid.  The majority of those are for

5    the sale of gas.  Eastman was unable to find one of the

6    invoices that it listed in its proof of claim.  And so,

7    therefore, the objection is -- has some validity because we

8    are going to ask the Court to change the amount of the proof

9    of claim.  The proof of claim should be $389,113.04.  And

10   Eastman's cure claim, which includes some post-petition

11   invoices, should be $449,956.38.

12           I expect that after I call my witness and the other

13   side, the debtor calls a witness, there may be some

14   objections to relevancy because it seems that maybe their

15   claim is outside of the proof of claim issue or the cure

16   issue.  It's still unclear to me.  But at this time, we ask

17   the Court to find Eastman's proof of claim in the amount and

18   that it be allowed and that there be a cure amount determined

19   by the Court today.  And alternatively, if the debtor cannot

20   cure the gas sales contract or reach an agreement to cure the

21   gas sales contract, that the plan not be confirmed.

22           And that's my opening statement.  I figure they're

23   going to do an opening statement and then I can call my

24   witness.

25               THE COURT:  All right.  I have a couple of


                    CINDY SUMNER, CSR (214) 802-7196

1  questions, just math questions.

2       Can you tell me the amount that your client says is the

3  unpaid pre-petition amount and the unpaid post-petition

4  amount?

5            MS. HAMM:  Yes.  The unpaid pre-petition

6  amount -- hold on.  Of course I have it in different places.

7       The unpaid pre-petition amount is 389,113.04.

8            THE COURT:  All right.

9            MS. HAMM:  And the unpaid post-petition amount

10 is 64,697.32.

11           THE COURT:  All right.  And --

12           MS. HAMM:  But -- and one more dollar figure.

13 So of that pre-petition amount, and it's only in the cure

14 claim, is 385,259.06.

15           THE COURT:  Okay.  Explain that to me.

16           MS. HAMM:  So there's about $4,000 in

17 pre-petition invoices that are related to some American

18 Express charges that flowed through to the debtor, and some

19 regulatory invoices that flowed through to the debtor.  And

20 those are not part of the gas sales contract.

21           THE COURT:  Okay.  And so you said that was

22 385 --

23           MS. HAMM:  -- 259.06.

24           THE COURT:  Okay.  All right.  And the rest is

25 Amex.

1          Okay.  And in reviewing for today I saw where, at least

2    to me it looked like a part of the pre-petition amount in the

3    proof of claim was unpaid -- or allegedly unpaid construction

4    costs.  Is that -- tell me about that.

5              MS. HAMM:  So one of the exhibits today will

6    be a construction contract that the parties entered at the

7    very beginning of the company, 2013 -- or let me look --

8    2013, where the parties agreed that Eastman would construct a

9    pipeline to -- from -- you know, from the big pipelines to

10   the CNG Service Stations so that they could -- the debtor

11   could have access to gas.  These pipelines would be paid for

12   by the debtor, but owned by Eastman.  And that's pretty

13   common in the industry, from what I understand.  And that

14   $77,000 invoice is the one that we're not asserting today

15   because it's from 2016 and we can't find it.

16             THE COURT:  Okay.  All right.  Okay.  Thank

17   you.

18             MS. HAMM:  Uh-huh.

19             MR. LIEPINS:  Good morning, Your Honor.  Eric

20   Liepins for the debtor.

21        Your Honor, as the debtor may or may not remember from

22   some of the things we've done in this case, the debtor

23   operates six compressed natural gas stations.  My clients are

24   the current management which took over from the former

25   management in July 2022.  Important to note that the former

CINDY SUMNER, CSR (214) 802-7196

1   management is the same parties as Eastman Midstream, who is

2   asserting this large proof of claim.

3       Upon taking over, the new management encountered a

4   very -- various amount of problems.  Most importantly,

5   management learned that although the company had debts to the

6   bank for over $5 million, the debtor did not own its

7   pipeline, as counsel just explained.  And the debtor needed

8   to purchase its gas from only one source, which happened to

9   be Eastman Midstream, which was operated by former

10  management.

11      The bankruptcy was filed when new management learned

12  for the first time upon a deposition of one of the new

13  management people that there was a receivership action in

14  place and the Bank was about to put a Receiver in place over

15  the debtor.  Management had no knowledge of that.

16      After taking over the company, the former -- the new

17  management began to uncover a large number of irregularities.

18  After the case was filed, former management on behalf of its

19  company, again, Eastman Midstream, filed the proof of claim

20  that we're here on today for $494,000 and some change

21  asserting unpaid bills that were incurred when former

22  management ran up -- didn't pay its own company, Eastman

23  Midstream.

24      The debtor's plan does provide for assumption of all

25  contracts, including this gas contract with former


CINDY SUMNER, CSR (214) 802-7196

1    management.  The 494 pre-petition amount would need to be

2    cured in order to assume in that context.  The debtor has

3    reviewed the proof of claim and the company's records, which

4    were maintained by former management, and believes the proof

5    of claim is overstated.  The debtor will also show the

6    company's own records previously, again, maintained by the

7    management of Eastman Midstream, show that Eastman Midstream

8    was paid hundreds of thousands of dollars for which there is

9    no accounting for whatsoever.

10           We believe that once the Court Xs and Os out the proof

11   of claim amount, now the pre-petition proof of claim amount

12   of $385,000, with the company's records we will show that

13   there is no cure amount, pre-petition cure amount to be paid.

14   And that's what we believe we'll be able to show the Court.

15                THE COURT:  All right.  Well don't go.

16           So debtor's position is with respect to pre-petition

17   invoices that the amount should be zero, right?

18                MR. LIEPINS:  Correct.

19                THE COURT:  Okay.  And the basis for that

20   sounds like it's not really -- well, maybe this is my

21   question.  Is the basis for that a calculation dispute with

22   Eastman's records, or is it that there is some kind of offset

23   because of we'll call it, you know, questionable things, as

24   you put it, that happened before?

25                MR. LIEPINS:  Yeah, I think it's the former --


                    CINDY SUMNER, CSR (214) 802-7196

1    I mean, the latter, Your Honor.  Obviously since we're not

2    going over the zero number, we don't have to have an

3    adversary proceeding.  So we're talking an offset up to the

4    amount of the cure amount today, reserving whatever rights we

5    might have with respect to that to a later date.

6        But from the debtor's standpoint is there are records

7    that Eastman is going to show that say, hey, we have these

8    invoices.  But there are the debtor's records that show that

9    these invoices, one, overcharge; two, don't take into account

10   other payments made by the debtor to Eastman for which the

11   company's records indicate there was no credit.  So -- then

12   there's also going to be some records we're going to show

13   about purchases that the company made on behalf of Eastman

14   that it wasn't required to and Eastman just charged the

15   company back when former management was in charge.

16       So I think as we go through it you'll see those are

17   kind of the series of events; payments not credited,

18   overcharging, and then payments for things that were

19   purchased through the company that were not for the benefit

20   of the company.  And there will also be some evidence, Your

21   Honor, that Eastman as our only supplier apparently didn't

22   pay its bills and cut off gas to us for several months

23   because we could only supply from them.  And the contract you

24   will look at has a damage provision for what happens when

25   they don't supply gas to us and we have damages from that

CINDY SUMNER, CSR (214) 802-7196

1  section, too.  So those are our sections.

2          THE COURT:  All right.  And so tell me what

3  your post-petition number is.

4          MR. LIEPINS:  I was just asking my co-counsel

5  that.  It looks like there was a credit that had -- a payment

6  that hasn't been reflected on their $67,000.

7      So do we have a number, any of you, for what the

8  post-petition amount is?

9       I'll have to get back to you.  There is some, Your

10  Honor.  We'll get you the exact number for that.  But we do

11  show a credit -- a payment that hasn't been reflected off of

12  their 67,000.

13          THE COURT:  Okay.  All right.  So here's a

14  practical question, okay.  We're all here.  I'm happy to have

15  a hearing and do this.  But it sounds to me like unless the

16  debtor has another gas supplier lined up, which I guess you

17  may and the evidence can show, whatever happens today you

18  two, at least in the near term, are going to have to coexist.

19  Am I right about that?

20          MR. LIEPINS:  You are correct, Your Honor, or

21  else I would have rejected the contract rather than try to

22  assume it, yes, Your Honor.

23          THE COURT:  That's what I figure.  Okay.  And

24  so it would seem to me there is some zone of mutual interest

25  in which that could be taken into account and some agreement


CINDY SUMNER, CSR (214) 802-7196

```
 1   reached.  And so this is the question I asked not for the
 2   first time to you, since you're a regular here in Tyler is,
 3   have you all had some discussions about this?  And if so,
 4   were we, you know, on different planets or were we, you know,
 5   generally in the confines of Smith County?  And don't tell me
 6   too much, because I don't need to know.
 7              MR. LIEPINS:  Well, when we got here, Ms. Hamm
 8   and I decided to put them in a room and see who came out
 9   alive and we stayed out of it.  And then we threw
10   Mr. Weisbart in the middle of it to see if he could do
11   something.  I truthfully know there wasn't an agreement.  I
12   don't know if we moved the ball down the field that much,
13   Your Honor.
14              THE COURT:  All right.
15              MS. HAMM:  It's hard to say if we're on
16   another planet or not.
17       I think the key is that my clients need some additional
18   information to understand the debtor's position.
19              THE COURT:  Okay.  Ms. Chiarello, so I
20   appreciate you being here today.  Your client is owed far
21   more than anyone else who's involved.  And I'm curious how
22   impatient or not they are to see confirmation concluded.
23              MS. CHIARELLO:  Well, Your Honor, I guess --
24   again, Annmarie Chiarello of Winstead PC here on behalf of
25   Origin Bank.
```

1        So I will note that cash collateral authority expires

2    today.  That was one of the -- one of the reasons -- or what

3    fuels, I think, our settlement with the debtor that's in the

4    amended plan.  So we are eager to see things move forward.

5    There's no imminent melting ice cube, as far as the Bank

6    goes.  But, again, I don't have authority at this point to go

7    beyond today.  So I guess that's the first thing.

8        The second thing -- and I don't know if everyone --

9    everyone's going to get mad at me for mentioning this is that

10   Mr. Russell individually is in a Chapter 11 in front of Judge

11   Mullin in Fort Worth, I believe it's Mullin.  And there is a

12   pending motion to appoint a Chapter 11 Trustee in that case

13   that is set for early January.  I can look at my calendar and

14   tell you what that date is.  And why that's important for

15   today is that the interest of Eastman Midstream would -- if

16   that motion is granted would then be in control of a Chapter

17   11 or 7 Trustee, provided dismissal doesn't happen.  I think

18   that's -- you know, we have a myriad of the debtor can't be

19   in charge any longer motions pending in that court.  So that

20   may potentially alter the dynamics here, as well, if a

21   Chapter 11 or 7 Trustee is appointed in that case.

22       So this is a long way of saying I'm happy to reach out

23   to my client to ask for additional time to use cash

24   collateral, if that's what Your Honor is suggesting.

25           THE COURT:  Well, I'm -- I ask the question

CINDY SUMNER, CSR (214) 802-7196

1    because if you all would like that opportunity, I'm happy to

2    give it to you.  I mean, don't -- I never want to let the

3    process get in the way of a resolution that is beneficial to

4    everyone.  That's kind of the point of bankruptcy court,

5    right.  I understand it's a pain for you all to get in the

6    car and drive here and, you know, just this is -- it's very

7    expensive for everyone to come show up, so I don't want to

8    waste your time today.  We can certainly have a hearing.  But

9    if it would be beneficial to you all to, you know, continue

10   discussions, seeing that the stakes are quite existential, I

11   think, for the debtor, I'm happy to figure out a way to let

12   you all do that.

13            MS. CHIARELLO:  Your Honor, we're happy -- I'm

14   happy to recommend that to my client.  I think they'll be

15   amenable to that.  We believe that the settlement we've

16   reached in the amended plan is in the best interest of

17   everyone.  It does include getting the lawsuit dismissed this

18   week.  So we would have to put our heads together on what to

19   do, because I believe Your Honor may set hearings in that

20   case based on what's been filed in the near term.  And

21   obviously we're eager to put a bow on this case before the

22   end of the year.  But if more time would be helpful, we will

23   not stand in the way of that.

24            THE COURT:  Okay.  All right.

25       Well, Mr. Liepins -- well, really, Ms. Hamm, since it's

1  your objection, you tell me.  If you want to go ahead and go

2  forward, we'll go forward, or if you all want to visit a

3  little more or figure out what information needs to be

4  exchanged, or if you need 5 minutes to talk about that before

5  we call our first witness, you tell me.

6         MS. HAMM:  Your Honor, I think if you could

7  give us about 5 minutes to talk about that and see if -- I

8  think the main thing is we need some information from the

9  debtor to understand their position more than anything.  And

10  if we have that information, then I can tell you I think it's

11  great information and we need to figure something out, or we

12  don't think that this information is correct and we'd like to

13  go forward with the hearing.

14         THE COURT:  All right.  Well, I'll take 5

15  minutes then.  I understand -- I understand that this case is

16  one piece of a chess board of things going on outside,

17  frankly most of it outside the evidence and not too much I

18  know about, other than the hearing on Wednesday in the other

19  case that's here.  So I will take, we'll call it a 10 minute

20  recess.  And you all can let Ms. Davis know when you're ready

21  for me to come back in.  Okay?

22         MS. HAMM:  Thank you, Your Honor.

23              (Brief recess ensued.)

24         THE COURT:  All right.  All right,

25  Mr. Weisbart.


                    CINDY SUMNER, CSR (214) 802-7196

 1                MR. WEISBART:  Your Honor, we've been busy

 2   while you've been out.

 3                THE COURT:  Good.

 4                MR. WEISBART:  And I'm pleased to announce

 5   that a settlement has been reached.  I will attempt to read

 6   the terms of the settlement into the record, or announce it

 7   to the record and the parties to the settlement can correct

 8   me or clarify further.

 9        Essentially it involves three points.  And this is in

10   settlement of all of the objections to confirmation, the cure

11   issue, the claim issue.  The first point is that there will

12   be no cure payment to cure the assumption of the executory

13   contract other than the post-petition administrative claim

14   which is due today in the amount of $64,697.32.  And that

15   claim will be paid in accordance with the terms of the plan,

16   subject to confirmation obviously.

17        The second point is that the debtor will release

18   Midstream, Raymond Russell, and Matthew Russell from any

19   claims or causes of action it has up to this point in time,

20   so both pre-petition and post-petition through today.  And,

21   likewise, those individuals will release the debtor of any

22   claims it has up to this point in time.

23        Let's see, I've covered the cure amount.  I believe

24   that it is.  Obviously the Midstream objection to

25   confirmation will be withdrawn and the debtor will be free to


                    CINDY SUMNER, CSR (214) 802-7196

1  proceed with confirmation without any objection, filed

2  objection to the plan.

3            THE COURT:  All right.

4            MR. WEISBART:  And I obviously want the

5  individuals to affirm what I have said, as well as the

6  lawyers for the entities.

7            THE COURT:  All right.  And so with respect to

8  the claim objection, are we agreeing that the unsecured --

9  what are we agreeing that the unsecured --

10          MR. WEISBART:  The unsecured claim is zero.

11          THE COURT:  Okay.  Other than the

12  post-petition 64,000, okay.

13          MS. HAMM:  Yes, Your Honor.

14          THE COURT:  All right.  Well, Ms. Hamm, I

15  guess I'll start with you.  Does that -- does Mr. Weisbart's

16  representation of the agreement reached conform to your

17  client's understanding of the result of today's negotiations?

18          MS. HAMM:  Yes, it does conform.  And I have

19  authority to withdraw our objection to the plan, Midstream --

20  Eastman Midstream's objection to the plan.

21          THE COURT:  Okay.

22    And, Mr. Liepins?

23          MR. LIEPINS:  Your Honor, Eric Liepins for the

24  debtor.

25    Yes, the announcement of Mr. Weisbart does conform with

1    the agreement between the parties.  And I would like to go on

2    the record and say one of the few times that the Subchapter V

3    Trustee did an excellent job in negotiating this settlement

4    the way it's supposed to work.  So I wanted to make sure

5    that's known.

6              THE COURT:  All right.  And, Mr. Russell, do

7    you need to -- does -- we'll start with Kevin Russell, how's

8    that?  Does the representation of the agreement announced

9    conform to your understanding, as well?

10             MR. RUSSELL:  Yes.

11             THE COURT:  All right.  And, Mark Russell, the

12   same question.

13             MS. HAMM:  Raymond Russell.

14             THE COURT:  Raymond, I apologize.

15             MR. RUSSELL:  Yes, it does, Your Honor.

16             THE COURT:  Okay.  Very good.  Thank you.

17             MS. HAMM:  And then there's a Matthew Russell.

18             THE COURT:  Ah, Matthew Russell.  Does your

19   understanding -- do you agree with the representations that

20   were made on the record in resolution of the agreement, of

21   the objection to claim here today?

22             MR. RUSSELL:  I do.

23             THE COURT:  Okay.  Thank you.

24       All right.

25             MR. WEISBART:  And just to clarify.  The


                    CINDY SUMNER, CSR (214) 802-7196

1    released -- the two releases are as to the Matthew Russell

2    and Raymond Russell.  They do not include Kevin Russell.

3                    THE COURT:  Ah, okay.  I wrote that down

4    wrong.

5                    MR. LIEPINS:  But the company is also being

6    released, Eastman Midstream.

7                    MR. WEISBART:  And Midstream.

8                    THE COURT:  And Eastman Midstream, right.

9    Okay.  Well then I apologize, Kevin Russell, for asking.

10       Okay.  Well, it's 12:15.  Do you guys want to take a1

11   lunch break and come back and do our evidence regarding

12   confirmation, or do you want to go ahead and proceed so

13   everybody can get on the road?

14                   MR. LIEPINS:  Your Honor, it is now an

15   uncontested confirmation hearing.  I think -- I've done a

16   couple of them.  I think I can run through it pretty quickly.

17                   THE COURT:  Okay.

18                   MR. LIEPINS:  And I think everyone would

19   prefer to do that, if Your Honor is willing to be late to

20   lunch.

21                   THE COURT:  No, that's fine.

22                   MS. HAMM:  Your Honor, I'm going to butt in

23   real quick.  May Kevin Russell be excused?  He has something

24   to be at.

25                   THE COURT:  Yes, you may.


                    CINDY SUMNER, CSR (214) 802-7196

1          MS. HAMM:  Thank you.

2          THE COURT:  Thank you for your time today.

3          MR. LIEPINS:  Your Honor, may I approach?

4          THE COURT:  Yes, please.

5          MR. LIEPINS:  Your Honor, again, Eric Liepins

6   for the debtor.

7      Your Honor, I have handed the Court exhibit binders.

8   However, in light of the settlement we've just discussed, the

9   only three exhibits I'd like to present to the Court before I

10  move forward, Exhibit 1, which is the amended plan; Exhibit

11  2, which is the proof of service of the plan and ballots to

12  the creditors; and Exhibit 3, which is the ballot tally as it

13  relates to confirmation of the debtor's plan.  I'd move to

14  admit Exhibits A -- 1, 2, and 3.

15          THE COURT:  Is there any objection to the

16  admission of Exhibits 1, 2, or 3?

17          MS. CHIARELLO:  No objection, Your Honor, from

18  Origin.

19          MS. HAMM:  No objection with the understanding

20  that the plan's going to be amended to --

21          MR. LIEPINS:  Yeah.  I was going to talk to

22  you about how we'd do that in a minute.  But subject to

23  whether we need to amend the plan to incorporate this

24  settlement, or if we can incorporate the settlement in our

25  settlement documents with respect to the motions that are


               CINDY SUMNER, CSR (214) 802-7196

1   pending.  But if the Court feels we need to put it in the

2   plan, we will amend the plan, if the Court approves the plan.

3              THE COURT:  Okay.

4              MR. LIEPINS:  Your Honor, I have one witness,

5   a Mr. Bradley Thiessen.  And I can either proffer his

6   testimony or I can put him on for question and answer,

7   whatever the Court would prefer.

8              THE COURT:  Proffer is okay with me, if no one

9   has any objection to that.

10             MR. LIEPINS:  Great.

11     Your Honor, if called to testify he'd testify his name

12   is Brad Thiessen, T-h-i-e-s-s-e-n.  He is the CFO of the

13   debtor.  He would testify the debtor filed bankruptcy on July

14   14, 2022.  The debtor owns and operates six compressed

15   natural gas stations throughout Texas.  He would testify this

16   bankruptcy was caused as a result of a litigation between the

17   debtor and its secured lender.  He would understand -- he

18   would testify that this plan was -- that a plan has been

19   presented to repay the creditors of the debtor.  He would

20   testify that he is familiar with the plan.  And he would

21   testify this plan provides that the debtor will continue in

22   business operations to pay its creditors.

23     He would testify that he has reviewed Exhibit A and

24   that Exhibit A is the amended plan of reorganization.  He

25   would testify after Exhibit A was filed there was an

CINDY SUMNER, CSR (214) 802-7196

1  agreement reached between the debtor and its two landlords

2  which are set forth as Class 4.  And that agreement provides

3  that the amount of the cure payments will be made over five

4  months to pay the landlord their amounts they were owed plus

5  their attorney's fees.  And with that, it's his understanding

6  that the landlords have withdrawn any objection to the

7  debtor's plan.

8      He would testify that he understands the debtor has

9  reached an agreement with Origin Bank.  He would testify that

10 under the terms of the agreement with Origin Bank, Origin

11 Bank will have a secured claim in the amount of $566,000 and

12 an unsecured claim of approximately $2.9 million.  He would

13 testify that he believes it is in the best interest of the

14 debtor to assume its executory contracts and its leases.  He

15 would testify that he has been involved in the negotiations

16 with Eastman Midstream.  And that he believes the settlement

17 reached in the Eastman Midstream matter is in the best

18 interest of the estate.

19     He would testify that he has provided projections of

20 income and expenses that are attached to the plan.  He would

21 testify that the debtors have been operating during the terms

22 of this bankruptcy and have been making their payments to

23 their secured lender pursuant to the cash collateral order.

24 He would testify he is familiar with the operations of the

25 company and the projections and believes them to be accurate.


CINDY SUMNER, CSR (214) 802-7196

1    He would testify under the terms of the plan the debtor will

2    be paying a small amount of property taxes for 2022 which

3    will be paid out over a period of 42 months.  He would

4    testify there was a small proof of claim filed by the

5    Internal Revenue Service which will be paid out under the

6    terms of the plan.  He would testify that he understands the

7    debtor will be assuming its leases  with its landlords in

8    Class 4 and paying the cure arrearages over a period of five

9    months.  He would testify that he will be paying -- that the

10   claims will be paid to Origin Bank as follows.  The debtor

11   will pay an amount of -- let me get my exact number here.

12   The debtor will pay $450,000 in 60 equal payments with an

13   interest at a rate of 5 percent per annum commencing on the

14   effective date.  And then the debtor shall pay the sum of

15   $116,000 to Origin in 12 equal payments at 5 percent interest

16   commencing after the first 60 months of the plan.  He would

17   testify the balance of the Origin claim of $2,926,581 will be

18   treated as an unsecured creditor.

19       He would testify that he understands this plan was

20   presented to all creditors of the estate.  He would testify

21   that all creditors of the estate who have voted are set forth

22   in Exhibit 3.  He would testify that pursuant to Exhibit 3,

23   the class -- landlord Class 4 claims with the revisions spoke

24   about in open court have voted to accept the plan.  The

25   secured creditor, Origin Bank, has voted to accept the plan.


                   CINDY SUMNER, CSR (214) 802-7196

1    And that the unsecured creditors have voted to accept the

2    plan.

3         He would testify that based upon his knowledge of the

4    company's business operations the plan reflects payment to

5    the unsecured creditors of the disposable income of the

6    company after payment to the other creditors of this estate.

7    He would testify to the best of his knowledge this plan

8    complies with the applicable provisions of the Bankruptcy

9    Code.  And to the best of his knowledge, the debtor complies

10   with the applicable provisions of the Bankruptcy Code.  He

11   would testify this plan has been proposed in good faith and

12   not by any means forbidden by law.  He would testify that

13   under the terms of this plan, payment to be made by the

14   reorganized debtor for services and expenses in connection

15   with this case is subject to Bankruptcy Court approval.  He

16   would testify there are no governmental regulatory

17   commissions affected by this plan and the plan does not

18   affect any retiree benefits.

19        He would testify based upon his knowledge of the

20   operations of the debtor, he believes if the plan is

21   approved, there will not be any need for further financial

22   restructuring.  He believes the business will be successful

23   and be allowed -- if allowed to operate under the terms of

24   this plan.  And he would ask the Court to confirm the amended

25   plan subject to any modifications required with respect to


CINDY SUMNER, CSR (214) 802-7196

1   the Eastman settlement that was discussed earlier before the

2   Court.   That would be Mr. Thiessen's testimony, Your Honor.

3           THE COURT:  All right.  Mr. Thiessen, if you

4   would please raise your right hand and Ms. Davis really

5   quickly will swear you in.

6           (The witness was sworn by the courtroom deputy.)

7           THE COURT:  And did you hear the proffer of

8   testimony that the debtor's attorney, Mr. Liepins, just

9   stated on the record?

10          THE WITNESS:  Yes, Your Honor.

11          THE COURT:  And if you were asked the same

12  questions, would you answer them the same way and adopt that

13  testimony as your sworn direct testimony in favor of

14  confirmation in court today?

15          THE WITNESS:  Yes, sir.

16          THE COURT:  All right.  Thank you.  You can

17  sit down.

18      Would anyone like to cross-examine Mr. Thiessen about

19  his proffer of testimony?

20          MS. CHIARELLO:  Your Honor, Annmarie

21  Chiarello.

22      I'll reserve if I would like to cross-examine

23  Mr. Thiessen for our case in chief, if that's okay.

24          THE COURT:  That's fine.  Sure.

25          MR. LIEPINS:  Nothing further from the debtor

1    at this time, Your Honor, then.

2              THE COURT:  All right.  Okay.  Thank you.

3         Would anyone else like to present any evidence for or

4    against confirmation?

5              MS. CHIARELLO:  Yes, Your Honor.  Annmarie

6    Chiarello on behalf of Origin Bank.

7         Your Honor, I'm standing up here today to address some

8    of Mr. Weisbart's comments included in his comment.  We

9    appreciate all of the hard work of the Subchapter V Trustee.

10   But I thought it might be helpful to eliminate a little bit

11   more on the Origin's element which was truly hard-fought

12   negotiated.

13        So as an initial matter, Mr. Liepins correctly

14   described the financial terms of the settlement.  But he did

15   not mention the fact that the adversary that is pending

16   against my client will be dismissed with prejudice as part of

17   this -- as part of the amended plan.

18        We had filed a witness and exhibit list at docket

19   number 85, I believe -- I'm sorry, 95.  And so at this time

20   we'd move to admit Exhibits A through T.

21             THE COURT:  A through --

22             MS. CHIARELLO:  T as in Tom.

23             THE COURT:  -- T.

24        Does anyone have any objection to the admission of

25   Origin Bank's Exhibits A through T?


                    CINDY SUMNER, CSR (214) 802-7196

 1                    MR. LIEPINS:  No objection, Your Honor.

 2                    THE COURT:  All right.  Exhibits A through T

 3    are admitted.

 4                    MS. CHIARELLO:  Thank you, Your Honor.

 5          And with that comment, I just want it from the Trustee

 6    and with the admission of our exhibits, I would turn Your

 7    Honor to Exhibits -- well, I think most importantly it's

 8    probably Exhibits S and T which are motions to dismiss and

 9    responses to motions to dismiss in the adversary case.

10          As you know, Your Honor, you're not required to conduct

11    a mini trial in order to approve a settlement pursuant to

12    9019.  But if you would like to see the merits -- or the lack

13    of merits, I believe, in the adversary case, we've included

14    those pleadings.  Essentially the adversary was filed after

15    the expiration of the cash collateral challenge deadline.

16    And therefore we believe the -- your prior order bars the

17    filing of the adversary.  It's been fully briefed, but I

18    think Your Honor will be happy to know, you do not have to

19    make that decision today.  And we will be dismissing that

20    with prejudice, based on our agreement.

21          The other stipulations and inclusion in here, while it

22    may seem like B is really just everything that was in the

23    cash collateral order that would have triggered, or what we

24    believe did trigger upon the expiration of the challenge

25    deadline, but for avoidance of doubt given that the adversary

1    was filed after the challenge deadline, we've just included

2    those things in here.  There's nothing new, nothing that

3    parties were not noticed of.  Really this is incapsulating

4    what our agreement was in the cash collateral order so

5    parties have been fully aware of these releases.

6         So with that, Your Honor, we would ask that you approve

7    the amended plan.  And we really do commend the debtor,

8    primarily Mr. Thiessen on his hard work getting to this

9    point.  Just anecdotally I'll tell you that he -- that our

10   clients -- Mr. Liepins and I stepped out of the way and let

11   our clients really come to terms on this.  And, you know,

12   sometimes I'm not always sure that's a good idea but this

13   really -- this worked out really well and I really appreciate

14   the debtor's hard work getting to this point.

15             THE COURT:  All right.  Thank you.

16        Did you have any questions for Mr. Thiessen or any

17   other witnesses you wanted to call?

18             MS. CHIARELLO:  No, Your Honor.

19             THE COURT:  Okay.  All right.  Thank you.

20        All right.  Mr. Weisbart.

21             MR. WEISBART:  Your Honor, I did file a short

22   comment which was done at the time of -- at the time that it

23   was filed, obviously.  But I've had more of an education

24   today about the case and I agree that this plan should be

25   confirmed and all requirements have been satisfied.


                    CINDY SUMNER, CSR (214) 802-7196

1              THE COURT:  All right.  Okay.

2         Well, before I rule, would anyone else like to state

3    anything on the record?

4         All right.  Then we're here today -- well, before I do

5    that.  Well, I already know the answer to that.

6         We're here today on a number of different matters in

7    the Independence Fuel case; a claim objection, application to

8    employ, confirmation of the debtor's amended plan.  The Court

9    finds with respect to confirmation, which is what this ruling

10   pertains to, that appropriate notice of the plan and this

11   hearing was given according to the federal and local rules of

12   bankruptcy procedure.  The Court has jurisdiction to consider

13   the plan pursuant to 28 USC 1334 and 157(a).  The Court has

14   authority to enter a final order in this matter because it

15   constitutes a core proceeding as contemplated under 28 USC

16   157(b)(2)(A)(L) and (O).

17        Based upon the Court's consideration of the pleadings,

18   the plan, the exhibits admitted, the arguments and

19   presentation of counsel, and the agreement as stated on the

20   record and resolution of the debtor's objection to the claim

21   of Eastman Midstream, the Court makes the following findings

22   of fact and conclusions of law pursuant to Federal Rule of

23   Civil Procedure 52 as incorporated into contested matters by

24   Federal Rule of Bankruptcy Procedure 7052.  Findings of fact

25   may be construed as conclusions of law and visa-versa and the

CINDY SUMNER, CSR (214) 802-7196

1   Court reserves the right to make any additional findings and

2   conclusions as necessary or as may be requested by any party.

3       The Court finds that the claims under the plan as

4   proposed were properly classified under Section 1122 of the

5   Code.  That the plan contains the mandatory elements needed

6   to be in plans pursuant to Section 1123 and also contains the

7   mandatory elements required by Section 1190 of the Code.  The

8   Court finds that Classes 4, 5, and 6, which are the claims of

9   the executory contract landlords, the claim of Origin Bank,

10  and unsecured creditors, which are all of the classes that

11  voted for or against the plan, that all of those classes have

12  voted in favor of the plan and that no other classes voted

13  against the plan.  It also appears that all of the objections

14  to confirmation which were filed have been resolved by

15  agreement, including the objection of Gregg County, of Origin

16  Bank, of Eastern Fuels, Eastern Fuel Properties, Eastman

17  Midstream, as well as, though he did not object to the issues

18  at least raised in the comment filed by Mr. Weisbart, the

19  Subchapter V Trustee.

20      All of the confirmation requirements under Section

21  1129(a) have been met, other than paragraph A(15), which of

22  course this is not an individual case.  The Court finds,

23  therefore, that the plan meets the requirements for

24  confirmation and is a consensual plan such that it can be

25  confirmed as a Subchapter V plan under Section 1191(a) of the

CINDY SUMNER, CSR (214) 802-7196

1   Bankruptcy Code.

2        Furthermore, the Court finds that the plan not only

3   resolves the financial issues of the debtor, but meets the

4   requirements under Bankruptcy Procedure Rule 9019 for

5   resolution of the outstanding adversary proceeding pending

6   between the debtor and Origin Bank.  That's adversary

7   22-6007.  And although the confirmation of the plan includes

8   this, the Court will state on the record that under Rule 9019

9   the Court further approves the resolution of that agreement

10  which -- or of that adversary which will result in the

11  dismissal of the adversary on the terms and conditions and

12  the time frame set forth in the plan.

13       So, Mr. Liepins, if you will upload a confirmation

14  order to me, I will sign off on the confirmation order.

15  However, a couple of housekeeping matters.  One of which is,

16  because the plan will be confirmed, we need to address what

17  to do about the application to employ to which Origin Bank

18  has objected.

19            MR. LIEPINS:  I was going to just withdraw

20  that on the record, Your Honor.

21            THE COURT:  All right.  We'll note that the

22  application to withdraw -- I mean the application to employ

23  Valdez Washington LLP as special counsel has been withdrawn

24  such that there is not a contested matter to consider.  The

25  plan is confirmed.


                 CINDY SUMNER, CSR (214) 802-7196

1   And then with respect to the claim objection and the

2   documentation of the agreement reached, you all tell me what

3   you consider the most efficient way to do that.

4          MR. LIEPINS:  I was kind of thinking through

5   that.  Whether -- I do believe, Your Honor, that I -- because

6   that we have now included certain releases of certain

7   individuals as part of our claim objection resolution, that

8   what would be most likely the best thing to do would be to

9   amend the plan to make sure that those are noticed out and

10  kept in the plan.

11  With respect to the -- I think Ms. Hamm and I can do a

12  simple order with respect to the amount of the objection to

13  proof of claim.  But I do think in order to incorporate the

14  release language, we should probably amend the plan and put

15  that language in an amended plan before I upload an order to

16  the Court, unless Ms. Hamm has a different thought.

17         MS. HAMM:  I agree.  And the admin claims

18  should be added.

19         MR. LIEPINS:  Added into, yeah.  We can put

20  the dollar amount into the Class 1, which is sort of my admin

21  class.  I don't have a problem doing that also.

22         THE COURT:  All right.

23         MR. LIEPINS:  So if the Court's okay with

24  that, I would prefer that we work out our language in the

25  next day or so and then file an amended plan and then upload


CINDY SUMNER, CSR (214) 802-7196

1   a confirmation order of that plan.

2            THE COURT:  That's fine.  That was my question

3   was how long do you guys think you need to do all that.

4            MR. LIEPINS:  Oh, I can't imagine it will take

5   either one of us more than a day or two at tops to get it

6   done.

7            THE COURT:  All right.  Then why don't we do

8   this.  The Court's already confirmed the plan.  Why don't as

9   part of my ruling you all are directed to file your amended

10  plan together with an agreed confirmation order within 7 days

11  of the hearing today, so by Monday of next week.  And then

12  with respect to your claim objection, you can just submit an

13  agreed order with the specific calculations.

14           MR. LIEPINS:  We can do that, Your Honor.

15           THE COURT:  All right.  Okay.  Well,

16  congratulations to the debtor.  It's been, I think, a long,

17  hard road to get here.  And many cases that end up in

18  bankruptcy court are far less successful than this one.

19       Is there anything else that we need to discuss on the

20  record today in this matter while we're all here?

21           MR. LIEPINS:  I don't believe so.

22  Ms. Chiarello has mentioned that under the terms of this we

23  will be submitting an agreed order of dismissal in the

24  adversary.  I think we have a deadline of tomorrow to do

25  that.  And I think that shouldn't be a problem to do.


                CINDY SUMNER, CSR (214) 802-7196

1                THE COURT:  Okay.  Well I very much appreciate

2    you all not making me rule on the motion to dismiss that's

3    pending in that case.

4                MR. LIEPINS:  Thank you, Your Honor.

5                THE COURT:  All right.  Well, thank you all

6    for your time and for making the trip both up to and over to

7    Tyler.  I hope you have a good Christmas.  The Court will be

8    adjourned and stand in recess.

9                (End of Proceedings.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25



                    CINDY SUMNER, CSR (214) 802-7196

1                    C E R T I F I C A T E

2          I, CINDY SUMNER, do hereby certify that the

3    foregoing constitutes a full, true, and complete

4    transcription of the proceedings as heretofore set forth in

5    the above-captioned and numbered cause in typewriting before

6    me.

7

8

9

10

11

12

13

14                        /s/Cindy Sumner

15          _____

16                   CINDY SUMNER, CSR #5832
                     Expires 10-31-2024
17                   Cindy Sumner, CSR
                     5001 Vineyard Lane
18                   McKinney, Texas 75070
                     214 802-7196
19

20

21

22

23

24

25


                 CINDY SUMNER, CSR (214) 802-7196